(Lorain County, O., Court of Common Pleas —July, 1897.)

THE BRUSH ELECTRIC CO. v. THE WARWICK ELECTRIC MFG. CO.

*Land contract—Failure to pay purchase money—Forfeiture.*

Where a contract for the sale of land for a certain sum is made, the purchase money to be paid on a certain future day, and the purchaser thereupon, with the knowledge and acquiescence of the vendor, proceeds to erect valuable buildings and make other improvements on the property, but fails to pay the purchase money on the day stipulated, the contract is not thereby forfeited, but the vendor may recover the purchase price by suit to enforce the payment by the sale of the property, and where the vendor, after the failure of the purchaser to pay on the stipulated day, without demand of payment or notice of forfeiture, sells the property to third parties, such third parties will have no more rights than the vendor had himself.

*Reservoir appurtenance to premises— Mechanics' Lien.*

The digging and construction on the premises of a reservoir to store water for the use of the factory being in course of construction on the land is an appurtenance to the property, and such a structure as will entitle the contractor constructing such reservoir, to a mechanic's lien.

*Subcontractors' liens failing, payment out of money coming to contractors.*

Although under the decision of the supreme court, sub contractors under the present statute can not obtain a lien on the premises, yet all the parties being before the court in a proceeding in equity to dispose of the proceeds of the sale of the property to satisfy liens, and original contractors being entitled to part of the money, sub-contractors who have perfected their lien on the property are entitled as against original contractors to payment out of the money coming to such contractors.

---

NYE, J.

In the case of The Brush Electric Company against The Warwick Electric Mfg. Co., and others, an action has been brought in this court to foreclose a mechanic's lien. The plaintiff claims that it furnished certain electrical appliances for the defendant, The Warwick Electric Mfg. Co., to build its electric plant at Wellington, Ohio. There are about forty-five defendants in this case, each of which claims a lien upon this property, and the question of these mechanic's liens has been submitted to me, with other questions; and I am of the opinion that the questions for me to decide are ciphered down to a few legal questions and a few questions of fact, and I will not undertake in my decision to go into the details of each particular claim, but state generally the conclusions of law and fact that I have arrived at in deciding the case.

The history of this case shows that some time in May, 1896, the defendant, The Warwick Electric Mfg. Co.; went to Wellington for the purpose of erecting an electric plant. After some negotiations, it found a piece of land, belonging to Mary Mullin and Delia Mullin, at what I will call the south angle of the intersection of the Big Four Railroad and The Wheeling & Lake Erie Railroad.

Mr. Cunningham, the president of the company, Mr. Haskell an attorney, and Mr. S. S. Warner, went down to see Mary Mullin with reference to making a contract for the purchase of this land.

A contract was drawn up and Mary Mullin signed the contract, selling to The Warwick Electric Mfg. Co., about six acres of land.

Delia Mullin was then living at Vermillion. Mary and Delia were sisters. Mary Mullin signed the contract for herself and she also signed it as agent of her sister, Delia. The consideration was $1,300.00. There is no proof showing Mary Mullin at the time she signed this contract had any authority from her sister to sign it, and whatever rights is claimed under this contract by virtue of her signing for Delia, is claimed by reason of her acquiescence or approval of the contract afterwards.

Inasmuch as this contract of sale of this land is one of the principal features in this case, I ought to say further, that after the signing of this contract by Mary, she went

immediately to Vermillion where her sister was, and notified her sister what she had done. Her sister Delia inquired where the contract was, and Mary said she had not got a copy of it, but that it was left with Mr. Haskell. Delia immediately went to Wellington to look up the contract, and went to Mr. Haskell's office, but did not find him there.

After the building and electric plant was erected upon this property, Mr. Chas. W. Horr and Norton T. Horr, negotiated with these two girls and bought this property. In the meantime, Mary had become insane and had been taken to the aslyum. Delia had been appointed her guardian. The Horrs made a contract with Delia by which they gave her $3,000 for this property.

Delia got an order of the probate court to sell Mary's part for $1,500.00 and Delia deeds her interest for $1,500 to the Horrs.

The Horrs claim that the purchase price never having been paid or tendered by The Warwick Electric Mfg. Co. that they are entitled to an order of this court quieting their title in this property.

The other parties having furnished the material to the extent of about $2,500, claim mechanics' liens upon this property to the extent of nearly $2,500.00, and that all the Horrs are entitled to, is the interest which the Mullins had, which is the payment of the $1,300 for this property, and these are among the questions I am to determine in this case.

Now, the proof in this case shows that as soon as The Warwick Electric Mf'g. Co. got this land contract, it went on to make contracts for the building of this Electric plant, and the proof further shows that it and other parties have put upon this property in the neighborhood of $25,000.00 for buildings, and constructing a large reservoir, putting in machinery and putting up poles and wires through the village of Wellington.

The Horrs claim these should all be forfeited to them. And it is also claimed that Delia not having signed this contract, never was bound by it.

The proof in this case shows Delia went almost immediately to Cleveland, and while there in Cleveland, she had a talk with Mr. S. S. Warner. Mr. Warner, while he is not able to say exactly what she said about the contract, says she made no objection to it, and from all appearances acquiesced in the contract her sister had made for the sale of this land.

She had a talk with Mr. Couch in the street of Wellington after this, and she asked Mr. Couch if he thought this man Cunningham, would ever get the money to pay her for this contract, and Mr. Couch laughingly said: "If you had not asked so big a price for the land, so they could not pay for the rest of the plant, perhaps he would." Mr. Couch says she apparently was anxious to get her money out of this contract.

The proof shows from time to time Delia was in Wellington. She saw this structure going up on her land.

Without going through the details of all this testimony, I am thoroughly of the opinion that she acquiesced in this contract, she understood what it was, and she knew what was being done there, her only anxiety was to get her money.

It is said that because this money which was to be paid on the land contract the 1st of August, 1896, was not paid then, this contract should be forfeited, and all this property go back to these girls or to their assigns. And a large number of authorities have been cited to me from other states, showing that all the rights these lien holders could get in this property, were the rights of the Warwick Electric Mf'g. Co., which was to pay this money when it was due, or else the contract was forfeited.

Now, I am of the opinion that we have an abundance of authority in Ohio to settle all of these questions as to forfeiture.

In the case of Brock et al, v. Hidy et al., 13 Ohio St., 306, a forfeiture was claimed.

In deciding the case Judge Brinkerhoff says: "Ordinarily, time is not regarded in equity as being of the essence of a contract, and is so regarded only when it is expressly made so by the terms of the contract, or the parties have so treated it, or is necessarily so from the nature of the contract."

"No circumstance appears in the present case to take it out of the general rule. It seems to us that there was a clear equity, on the expiration of the seven years credit, in favor of Solomon Carr, or his vendees. By the lapse of time, and the improvements he had made, the value of the land had been increased many fold. A rescission of the contract would not place parties in statu quo, and equity forbids it."

Now, this perhaps would be enough to cite in this case, but inasmuch as this question has been very thoroughly discussed and a large number of authorities cited upon the question of forfeiture, I call attention to another case in the 44 Ohio St., 156-71. I call it more especially because it affirms the case in the 13th Ohio St., 306.

The action of the company in the case was in effect a repudiation of its promise to pay the amount stipulated in the policy.

Spear. J., speaking for the court, says: "Notice was essential to a forfeiture. The company gave none, and by its course of action waived the forfeiture which might have arisen from non-payment of premium due June 4th, 1880, and is now estopped from setting it up."

In the case at bar there was never any demand for this money from The Warwick Electric Mf'g. Co.; there was never any offer made to forfeit the contract; the parties simply rested upon the contract without any forfeiture whatever, or without any attempt to forfeit.

Now, in this same line as to forfeiture there is a case in the 53 Ohio St., 558, showing the decisions in Ohio upon this question of forfeiture.

This is the case of Webster against Dwelling House Insurance Co., where it was sought to forfeit a fire insurance policy, and what I

read in this case is from page 563. "A primal rule is. that forfeitures are not favored either in equity or at law, indeed, it is declared as a universal rule that courts of equity will not lend their aid to enforce a forfeiture. Following as a corollary from this, provisions for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced."

What would be the result in this case after a forfeiture of this contract? Why, these defendants in this case, and I speak especially of the lien holders, have put their money, their property and their labor into this plant.

Here was a piece of land worth $1,300.00, and the parties have put upon this property $25,000.00. A forfeiture of this contract would be to do an injustice instead of a court of equity doing justice to all parties in the case.

These Mullin girls were entitled to have their money. True they have been delayed, but the law gives them interest on it.

Now, I am of the opinion that all they were entitled to was their money, they not having sought any forfeiture of this contract.

It is conceded that all the rights the Horrs got in this property was what the Mullins had. If that is true, they have a right to the $1,300.00 and interest on it, that is what I think they got. I think that is all the interest they have in this property.

I hold these lien holders are entitled to their liens upon this property, subject however to the payment of the claim of the Horrs, who have got the interest of the Mullins.

The next matter that I will decide in this case, is the claim of Neal Norton. He claims some twenty-five hundred dollars for constructing a reservoir on this property.

It seems that this electric plant was to be run by steam, and they sought the construction of the reservoir which was to store water sufficient to supply the steam engines in case of a drought and at all times.

They made a contract with Neal Norton by which he was to build the reservoir. He was to have fifteen cents a cubic yard for the earth moved in making a reservoir and his claim amounts to about $2,500.00.

It is said this is not a structure; it is said it is not an appurtenance to this property.

Now. I am of the opinion that this reservoir is a part of this main structure, and the object to be accomplished by these parties.

They were to have an electric plant, and sought to supply it with water, to be independent of a drought or rains.

I think it is a part of the main structure of this plant, and without it, it might have been entirely useless as an electric light plant.

I do not suppose anybody would question but what the digging of a cellar was a part of the structure to a house or an appurtenance to it.

I do not suppose anybody would question but what a cistern for storing water to run

a steam grist mill or saw mill, is an appurtenance to it and necessary to it, and without which you could not use it, unless you had water supplied some other way.

I do not know but if you were building a saw mill to run by water, that a dam across a stream would be an appurtenance. An appurtenance is something attached to the realty.

There is one other question about the rights of sub-contractors.

While our supreme court has passed upon the mechanic's lien law, as to sub contractors, there are a few sub contractors in this case that perhaps would not be entitled under the pleadings and under the statements made in this case to a lien upon this property as against the owners of the property.

But I am of the opinion, the parties all being before the court, and this being a court of equity, that this court has a right to determine the disposition of this money. I am of the opinion where there is an original contractor, and he has got money coming to him upon this property, and also a sub-contractor in this case, who has taken the proper steps to perfect his lien upon this property, that he is entitled as against the original contractor to his share of this money.

To illustrate, in this case generally, Mitchell was an original contractor in this case. The Forest City Wire & Iron Company, claim to have furnished him material to the amount of $189.59, for the carrying out of Mitchell's contract.

Now, I hold that as between Mitchell and The Forest City Wire & Iron Company, that said company have a right in this case to have its claim paid out of the money that is going to Mitchell.

That does not conflict in my judgment with the ruling of the supreme court in holding that a sub contractor cannot get a lien as against the property, but he gets a lien upon the fund going to the original contractor.

Now, you may have a decree that this property, including poles, wires, arc-lights and all other appurtenances, may be ordered sold subject only to the easement of Esther Horr

Out of the proceeds shall be paid:

First :—The costs in this case.

Second :—The claim of Chas. W. and Norton T. Horr.

Third :—The amount hereinafter to be determined by this court for the receiver.

Fourth :—To the lien holders in proportion to the amounts of their respective liens, which is subject however, to the payment of sub-contractors out of their original contractor's funds.

I think I have determined now, all questions, so this property can be sold if no appeal is taken.