**Lake Shore & M. S. Ry. Co. v. Henry A. Foster, Adm.**

1. NEGLIGENCE—*Failure of Person About to Cross a Railroad Track to Look and Listen Not Necessarily Negligence.*—Whether a person about to cross a railroad track is guilty of negligence if he does not look and listen is a question of fact for the jury, to be determined from a consideration of the circumstances of the particular case, and it can not be held as matter of law that a person who fails to look and listen under such circumstances, is guilty of negligence.

2. VERDICTS—*Duty of a Court of Appeal as to.*—While it is the duty of this court to consider the evidence and determine, when the question is properly presented, whether a verdict is manifestly against the weight of the evidence, it is not the duty or right of the court to usurp the province of the jury, and set aside their verdict merely on the ground that the court, had they been sitting as jurors, would have found differently.

3. RAILROADS—*Running Trains at Dangerous Rate of Speed.*—Whether a railroad company, at the time of an accident, was running a train at a dangerous and unreasonable rate of speed, is a question for the jury, to be determined from a consideration of the circumstances of the particular case.

4. SAME—*Flagmen at Crossings.*—Although there may be no evidence of any ordinance requiring a flagman at a certain railroad crossing, and therefore no absolute duty incumbent on the railroad company to have one at such crossing, yet the fact that there was no flagman at such crossing is proper to be considered by the jury in passing on the question of the alleged negligence of the company in operating its road.

5. EVIDENCE—*Statement of Engineer That He Could Have Stopped Train in Time to Avoid Injury, Held Admissible.*—An engineer testified that when about 250 feet from a crossing he saw a man from twenty to forty feet from the tracks, approaching the tracks, and that at the rate the train was running he could have stopped it within a space of fifty feet. *Held,* that the evidence was competent under a declaration alleging that the railroad company, by its servants, so carelessly managed its locomotive engine and train, in driving the same at such high and unreasonable rate of speed, that by and through the negligent and improper conduct of the defendant, the injury sued on was caused.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed March 3, 1898.

WM. McFADON, attorney for appellant.

The evidence as to the conduct of deceased in approaching the tracks of appellant not being conflicting, and such evidence showing that deceased took no precautions for his own safety in approaching said tracks, but went blindly into danger, the verdict of the jury is in no manner binding upon this court, and it is the duty of this court to set the verdict aside. Chicago & N. W. Ry. Co. v. Holdom, 66 Ill. App. 201; citing Chicago & A. R. R. Co. v. Heinrich, 157 Ill. 388; Block v. Swift & Co., 161 Ill. 107; Chicago, B. & Q. R. R. Co. v. Thorson, 68 Ill. App. 288.

Though the decisions of this State may prevent trial courts from instructing juries as to what will or will not constitute negligence in approaching a railroad track, it is nevertheless as much as ever the rule in Illinois that due care on the part of one approaching a railroad track requires that before crossing he should look and listen or otherwise

ascertain whether it is safe to do so or not.  Chicago, B. & Q. R. R. Co. v. Thorson, 68 Ill. App. 288;  Chicago, M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248; Illinois Steel Co. v. Szutenbach, 64 Ill. App. 642; Illinois C. R. R. Co. v. Borders, 61 Ill. App. 55; Pennsylvania Co. v. Keane, 41 Ill. App. 317; Chicago North Shore St. Ry. Co. v. McCarthy, 66 Ill. App. 667; and if, as in this case, the evidence shows that the injured man looked only straight ahead, a clear case of want of due care is established.  Sutherland v. New York C. & H. R. R. R. Co., 9 J. & S. (N. Y.) 17; Chicago, B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; Chicago, B. & Q. R. R. Co. v. Thorson, 68 Ill. App. 288.

This would seem to be a corollary of the two following propositions, which have become adopted as axiomatic principles of law:

1st.   That a railroad is itself a warning and notice that it is a place of danger.  Chicago, B. & Q. R. R. Co. v. Thorson, 68 Ill. App. 293; Chicago, M. & St. Paul R. R. Co. v. Halsey, 133 Ill. 254; 3 Elliott on R. R., Sec. 1165; Lake S. & M. S. R. R. Co. v. Sunderland, 2 Brad. 307.

2d.   That one must make at least an ordinary use of his senses to save himself from injury when approaching a place of danger.  Chicago, M. & St. Paul Ry. Co. v. Halsey, 133 Ill. 248.

JESSE COX, attorney for appellee.

Running a train at a speed of thirty-five or forty miles an hour over a crossing in a crowded city, is gross and wanton negligence.  Lake S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596.

This court has said that if, in a populous part of a city, a train is operated at twenty-five miles per hour, no bell being rung, the negligence is culpable.  Lake S. & M. S. Ry. Co. v. Bodemer, 33 Ill. App. 479; Lake S. & M. S. Ry. Co. v. Pauly, 37 App. 203.

The speed of the train is a part of the *res gestae*, and in arriving at a solution of the question of negligence of the defendant, the rate of speed of the train is a fact that the

jury may properly consider. Lake S. & M. S. Ry. Co. v. Ouska, 151 Ill. 232; Illinois C. R. R. Co. v. Slater, 129 Ill. 91.

"Railroad companies in operating their cars in crossing public highways, must so regulate the speed of their trains, and give such signals to persons passing, that all may be apprised of the danger of crossing the railroad track; *and a failure in any of these duties* on their part should render them liable for injuries inflicted and for wrongs resulting from such omissions." Rockford, R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235; Chicago & R. I. R. R. Co. v. Still, 19 Ill. 508.

"Where railroad companies cover a public street with a large number of tracks, they must observe unusual care, and take extra precautions to avoid injury to persons crossing the street or sidewalk." Lake S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 649.

"It will be presumed that servants of a railroad company having charge of its trains, are cognizant of the road crossings along the line of their road, and that persons are at all times liable to be in the act of passing the point of intersection, and they must be on the lookout, so as to avoid injury to such persons, as well as those in their care, as far as may be done by the use of reasonable efforts.

A mere compliance with the requirements of the statute in sounding the whistle, or in ringing the bell, does not authorize those in charge and control of these mighty forces to omit other reasonable and necessary precautions, and to destroy life or inflict great bodily injury." Indianapolis & St. L. R. R. Co. v. Stables, 62 Ill. 316.

It is the duty of a railroad company whose road runs through a village, to run their trains, while in the village, at such rate of speed as to have them under control, and be able to avoid injury to persons or property, though there is no ordinance of such village on the subject, and if they fail to do so, they are guilty of negligence. Chicago & A. R. R. Co. v. Engle, 84 Ill. 397; Pennsylvania Co. v. Frana, 112 Ill. 405.

"It is a question for the jury to determine, from all the

evidence, whether those in charge of a train were guilty of negligence in not stopping the train before the collision occurred. Cases might occur where a railroad company would be under no obligation whatever to stop a train, and, on the other hand, cases might arise where a failure to do so would be gross negligence. Each case must be determined by its facts, and those facts are for the jury." Pennsylvania Co. v. Frana, 112 Ill. 405.

If the engineer could easily have seen a person on the track, or about to cross the same, in time to have averted the injury to him, and failed to do so, through want of ordinary care, the negligence is gross and wanton. Lake S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596.

" The court can never be called upon to say to the jury that contributory negligence has been established as a matter of law, unless the conduct of the injured party has been so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent. Negligence can not be conclusively established by a state of facts upon which fair-minded men will differ. Unless the negligence of the plaintiff is proven by such conclusive evidence that there can be no difference of opinion as to its existence upon the mere statement of facts, the jury must pass upon it. We have repeatedly held that it is a question of fact to be determined by the jury, from the evidence, and not a question of law, whether an injured party has exercised ordinary care for his safety and to avoid injury." Lake S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 647; Chicago & E. I. R. R. Co. v. O'Connor, 119 Ill. 586; Terre H. & I. R. R. Co. v. Voelker, 129 Ill. 540; Pennsylvania Co. v. Frana, 112 Ill. 398; Chicago & I. R. R. Co. v. Lane, 130 Ill. 116.

The omission of a person approaching a railway crossing to look and listen for a coming train does not necessarily, and as a matter of law, constitute negligence. Toledo, St. L. & K. C. R. R. Co. v. Cline, 135 Ill. 49; Terre H. & I. R. R. Co. v. Voelker, 129 Ill. 540; Pennsylvania Co. v. Keane, 41 Ill. App. 317; Chicago & E. I. R. R. Co. v. Tilton, 26 Ill. App. 362.

It can not be said, as a matter of law, that a person, approaching a place of danger, must take a particular precaution or measure, or just what a prudent man would do under all circumstances.    Chicago, St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 587; Chicago & A. R. R. Co. v. Adler, 129 Ill. 335; The Pennsylvania Co. v. Frana, 112 Ill. 398.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment in favor of appellee and against appellant for the sum of $5,000, rendered in an action for the alleged negligence of appellant, by reason of which, it is claimed, appellee's intestate, Louis Smith, was killed December 16, 1893.

The declaration alleges as negligence, the running of appellant's train at a high and unreasonable rate of speed; failure to ring a bell or sound a whistle; leaving gates open; failure to give warning of approach of train, and to provide a flagman.

Louis Smith was killed December 16, 1893, between six and seven o'clock at night, at the intersection of appellant's tracks with Ewing avenue in the city of Chicago.    He was then about thirty-two years of age, and left surviving him a widow and two children, a boy about one year old, and a girl between three and four years old, at the time of his death.

Ewing avenue runs north and south, and One Hundredth street east and west.   The railroad tracks of the Ft. Wayne, Lake Shore & Michigan Southern, and Baltimore & Ohio Railroad Companies cross Ewing avenue in a northwesterly and southeasterly direction, as hereafter described.    Each of the companies has double tracks, so that six tracks in all cross Ewing avenue.    The relative situation of the tracks of the three companies, and their distances from each other, are as follows :    The Fort Wayne tracks cross from the southeast corner of the intersection of Ewing avenue and One Hundredth street, to the northwest corner of said intersection; parallel with the last mentioned tracks and

northeast therefrom about eighty feet, are the tracks of the appellant; parallel with and northeast of the last tracks and distant therefrom about 110 feet, are the tracks of the Baltimore & Ohio Company. The distance from the most northerly rail of the B. & O. R. R. to the most southerly rail of the Ft. Wayne railroad is about 245 feet. These distances are estimated by the scale of the map contained in the record, viz. : twenty feet to the inch. There is a gate northeast of the B. & O. tracks, and parallel with them, across Ewing avenue, and also a gate southeast of the Ft. Wayne tracks and parallel with them, across the intersection of Ewing avenue and One Hundredth street. Between the gates mentioned there are no other gates. The train that killed Louis Smith was the west bound train, and was approaching Chicago on the southerly track of appellant. The accident occurred about 6:30 o'clock at night. The preponderance of the evidence is that the night was very dark and stormy, and that it was snowing and cold. We think also, that the preponderance of evidence is that the crossing was dark, or at least was poorly and insufficiently lighted. The plaintiff's witnesses so testified, and Hesselquist, a witness for appellant, who was a watchman for the three railroad companies above mentioned, in a tower at Ewing avenue and One Hundredth street, testified : " There were some lights there at the time of the accident, but it was rather dark and I could not see. There was an electric light burning there the evening of the accident; it was very dark at the crossing." In another place, he says, " I remember they lighted the electric lights before dark. I guess those lights have been put there since the accident." The evidence shows that the station agent and the conductor of the train used lamps in looking for appellee's intestate at the crossing, after he was struck by the engine. There was a station of appellant between One Hundredth street and Ewing avenue, about twenty-five feet northerly from its tracks. The witnesses, in testifying as to the speed of the train at the time of the accident, vary in their estimates from twenty-five to forty-five miles per hour. Appellee's witnesses vary from thirty to forty-five miles

per hour, but all testify that the train was running very fast. Appellant's engineer, conductor and fireman testify it was running between twenty-five and thirty miles per hour. The conductor testified that the train was half an hour or so late, and that they had been trying to make up time between Elkhart, Indiana, and Chicago. The engineer and fireman of the train testified that the bell was ringing as the train approached Ewing avenue; and that it had been ringing ever since it left La Porte, Indiana. All that the conductor testified about the bell was that it was ringing when the train stopped. The engineer further testified that at the Indiana State line, about three-quarters of a mile from Ewing avenue, and again, within from 200 to 300 feet of Ewing avenue there was one long blast of the whistle; that between 200 or 300 feet east of One Hundredth street the crossing whistle, consisting of two long and two short whistles, was given, and that when near to Ewing avenue he gave a signal whistle for the gates to lower, and also gave an alarm whistle—three or four short blasts of the whistle; that when he gave the first of the short whistles he was about 150 feet from Ewing avenue, and when he gave the last, he was very close to Ewing avenue. He also testified that when about 250 feet from Ewing avenue he saw a man about from thirty to forty feet southerly from the tracks in Ewing avenue, approaching the tracks. The fireman and conductor corroborate the testimony of the engineer substantially, except that the fireman testifies that the train was very close to the Ewing avenue crossing when the first alarm whistle was sounded. The engineer testified that, as the train was running, he could have stopped it in the space of fifty feet. Hesselquist, witness for appellant, says he heard the bell ringing and the first whistle one block before the train reached the crossing. Shoemaker, appellant's witness, says he heard a long whistle just before the signal whistle, but don't know what train it came from; that it came from the east; that the first signal whistle was given just back of the depot, not very far back, and that when he looked, the headlight of the engine appeared above the corner of the depot.

Appellee's witnesses testified as follows:

Matthews:   Was about twenty to twenty-five feet from the place where deceased was struck; don't recollect whether bell was ringing; heard two or three whistles, the first close to the depot.

Mrs. Ringman:   Was about forty feet southerly from tracks, on Ewing avenue; heard neither bell nor whistle.

Thompson:   Was standing out in front of depot; didn't hear any bell; heard whistle, but the train was then on Ewing avenue.

Wells:   Standing near depot, heard no bell; heard no whistle till train was up to Ewing avenue sidewalk.   This witness say the bell was not rung.

Wells and Thompson, witnesses for appellee, testified that they were waiting at appellant's depot for a dummy train to go east to Whiting, Indiana, the dummy train being behind time; that the deceased came into the depot and inquired of the station agent what time it was; that the agent informed him, when he immediately turned round and walked pretty fast to the east Ewing avenue side-walk, and thence south on that sidewalk to appellant's tracks.   Measured by the scale of the map contained in the record, the distance from the southwesterly corner of the depot, measured on the line of the front of the depot produced westerly, is about forty-two and one-half feet, and from the point where such produced line would strike the sidewalk, to the northerly rail of appellant's west bound or southerly track, is about forty feet.   The depot is about thirty-five to forty feet northeasterly from the north rail of appellant's west bound track, on which the deceased was struck.   Matthews and Mrs. Ringman, who were approaching appellant's tracks from the south, on the east side of Ewing avenue, saw the deceased on the sidewalk ahead of them.   Matthews could not state whether the deceased was north or south of the tracks when he saw him, but Mrs. Ringman testified that he was north of the tracks when she first saw him.

The body of the deceased was found, immediately after

the accident, under the west sidewalk of Ewing avenue, about twenty feet south of the track.

Counsel for appellant contends that appellee did not exercise ordinary care in approaching the tracks, and that, in this respect, he was guilty of contributory negligence, such as should bar a recovery. This contention is based, at least in part, on the evidence of Thompson and Wells, that Smith, as he walked south on the sidewalk, looked straight ahead.

But Smith was walking due south when on the sidewalk; the train was approaching from the southeast; the witnesses Thompson and Wells were just outside the depot; the nearest they could have been to Smith, standing where they were, while he walked south on the sidewalk, was about thirty feet, measured by the scale of apppllant's map, and it was a dark, stormy night and snowing, as both Wells and Thompson testified. Under such circumstances, it must have been apparent to the jury, as it is to us, that the witnesses could not know whether or not the deceased looked in the direction from which the train came. Counsel also refers to the testimony of Wells to the effect that the deceased had a cap over his face. The evidence on this point is as follows: " You say this man, when he came into the depot, had a cap ? " " Yes, sir." " What kind of a cap was it ? " " I didn't pay any attention; I know that he had a cap on, and that is all. " " You didn't pay any attention to the cap ? " " I know he came in with a cap on; it looked like it was a black cap, or something or other." " How far did it come down on his face ? " " It came just right about there" (indicating over his face). " How far did it come down on the side ? " " He had it right around here, it looked like" (indicating over his ears).

Now it seems from the testimony of the witnesses Wells and Thompson, that the cap did not prevent the deceased from either seeing or hearing, because they say he came into the depot, went straight to the station agent, asked him what time it was, and, on receiving an answer, immediately turned around and went away. How he wore his cap while

L. S. & M. S. Ry. Co. v. Foster.

walking south on the sidewalk and before he reached the tracks, does not appear, but that it was on his head pretty loosely is probable from the fact, testified to by Matthews and Mrs. Ringman, that when the engine struck him his cap flew off and fell on the sidewalk in front of them. We can not say, as matter of law, that the deceased was negligent. Whether he was or not, was a question for the jury under all the facts and circumstances in evidence. Chicago & N. W. Ry. Co. v. Hansen, 166 Ill. 623; Pennsylvania Co. v. Frana, 112 Ill. 398; Chicago & E. I. R. R. Co. v. O'Connor, 119 Ill. 586; Terre Haute & I. R. R. Co. v. Voelker, 129 Ill. 551; Chicago & I. R. R. Co. v. Lane, 130 Ill. 116; Lake S. & M. S. Ry. Co. v. Johnson, 135 Ill. 647.

The court, in C. & N. W. Ry. Co. v. Hansen, and Terre H. & I. R. Co. v. Voelker, *supra*, and in other cases, have said that it can not be held, as matter of law, that a person about to cross a railway track is guilty of negligence if he does not look and listen. In the Hansen case, *supra*, the court say: "It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under like circumstances, must be left to the jury as one of fact." See also Toledo, St. L. & K. C. R. R. Co. v. Cline, 135 Ill. 41.

While it is our duty to consider the evidence and determine, when the question is properly presented, whether the verdict is manifestly against the weight of the evidence, it is the reverse of our duty to usurp the province of the jury and set aside their verdict, merely on the ground that, had we been sitting as jurors, we might or would have found differently. In the present case, we can not say that the finding of the jury, that the deceased was not lacking in ordinary care, is manifestly against the weight of the evidence.

The next question is whether the jury was warranted by the evidence in finding that appellant was guilty of negligence, as charged in the declaration, which caused the death of appellee's intestate.

That the crossing at Ewing avenue was an exceedingly dangerous one is beyond doubt. Six double tracks crossed the avenue within a space of about 245 feet. It was proved on the part of appellee that Ewing avenue is a business street, and that many people crossed and re-crossed the tracks at the place in question. Appellant's engineer testified that there were houses on both sides of One Hundredth street south of the Ft. Wayne tracks; that on the north side of the Ft. Wayne tracks there are houses on both sides of One Hundredth street, but that until you get north of the B. & O. tracks, it was not populated as close to the tracks on the west side as on the east side.

Whether, in view of the circumstances in evidence, appellant, at the time of the accident, was running its train at a dangerous and unreasonable rate of speed, was a question for the jury.

Chicago & A. R. R. Co. v. Engle, 84 Ill. 397, was a case for negligence in killing a horse within the territorial limits of a village. The court, in its opinion, says: " Then, from the evidence in the case, were the jury warranted in finding that the company was guilty of negligence ? The employes of the company certainly knew the track was not fenced through the village. They knew that persons might, at any hour of the night, be on the track or crossing over it, and they knew the same was true of cattle and horses. Knowing of this danger, it was their duty to have run through, or while in the village, at such a rate of speed as to have their trains under control, and (be) able to avoid injury to others." Lake S. & M. S. R. R. Co. v. Ouska, 151 Ill. 232; Chicago & R. I. R. R. Co. v. Still, 19 Ill. 508; Rockford R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235; Indianapolis & St. L. R. R. Co. v. Stables, 62 Ill. 318.

In the last case the court say : " Again, the train was running at a rapid rate of speed. All of the witnesses for defendant in error say the train was running very fast; and one of them, faster than he had ever traveled. It may be they could not say that it ran at precisely so many miles an hour—and it is probable that experts could alone have

determined that question—but the witnesses, having at least ordinary intelligence, could determine whether it ran fast or slow, or whether it was very fast, although they could not state the number of miles per hour.   And, if very fast, the the jury could say whether that, with the location of the roads and other circumstances, constituted negligence."

The evidence is that there was no flagman at the crossing, and although there was no evidence of any ordinance requiring a flagman, and therefore no absolute duty incumbent on appellant to have one at the crossing, as the court instructed the jury, yet the fact that there was no flagman. was proper to be considered by the jury in passing on the question of the alleged negligence of appellant in running its train.   Chicago & I. R. R. Co. v. Lane, 130 Ill. 116.

Appellant's engineer testified that, when about 250 feet distant from the crossing, he saw a man from twenty to forty feet distant from the track, approaching the tracks, and that at the rate the train was running, he could have stopped it within a space of fifty feet.   Appellant's counsel contends that this evidence was not competent under the declaration, but we think it was clearly competent under the averment in the first amended count, that appellant, by its servants, so carelessly managed the said locomotive engine and train, in driving the same at such high and unreasonable rate of speed, that by and through the negligence and improper conduct of the defendant, etc., the engine struck the deceased, etc.

Appellant's engineer and fireman testify that the bell was ringing, but it is apparent from the engineer's evidence that the jury might reasonably infer from his evidence that he so testified merely because it was his habit to ring the bell when approaching a crossing.   He testified: "That bell is rung by steam.   I set it going and then don't pay any more attention to it, except to know that it is ringing.   If the accident had not happened, I would have had an independent recollection of that bell ringing, for the reason that we sound a crossing whistle at every railroad crossing; and if the bell is not ringing on approaching that crossing, my

attention is attracted to it at all the crossings, the whole length of the road."

The witnesses for the appellee were each and all where they could have heard a bell of the weight of thirty pounds, such as was on the engine, ring, and testified that they did not hear it, and one of them, Wells, testified that it did not ring. Under these circumstances, the question was one for the jury. Rockford, R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235.

Appellant's counsel assigns as error the giving of appellee's first instruction, on the ground that it does not restrict recovery to negligence averred in the declaration. The language of the instruction objected to is: "And if the jury believe from the evidence that the said injury to the said Louis Smith was caused by the negligence of the servants or employes of the defendant in charge of said locomotive engine," etc. This instruction was evidently given with reference to the first amended count and the additional count of the declaration, in both of which careless and negligent management of the engine are averred. In another instruction, given at appellant's request, the jury were instructed that the plaintiff could not recover, unless he proved by a preponderance of the evidence that the defendant was guilty of negligence, as stated in the declaration or some count thereof. We do not think that the jury could have been misled, by the instruction objected to, into finding the appellant guilty of negligence not averred in the declaration. In Chicago, B. & Q. R. R. Co. v. Avery, 109 Ill. 314, an instruction much less restricted in its terms was held not to be cause for reversal. Appellant's counsel objects to the refusal of appellant's instruction 2a, its modification, and the giving it as modified, and to the refusal to give its 9th, 14th and 15th instructions. All these instructions relate to the degree of care required by law of appellee's intestate, in regard to which the jury was fully and fairly instructed.

The court had called the attention of the jury, in six instructions for appellant, to the necessity of the exercise of ordinary care by the deceased, and had fully defined ordi-

nary care, and the giving further instructions in reference to that subject would have been superfluous.

The judgment will be affirmed.