Chicago G. W. Ry. Co. v. William Mohan, by his Next Friend.

1. QUESTION OF FACT—*Speed of Trains and Ringing of Bell.*—The matter of the speed of the train, the ringing of the bell and the contributory negligence of the plaintiff are in this case questions properly and peculiarly for the consideration of the jury.

2. ORDINARY CARE—*Question of Fact.*—The question as to whether plaintiff was in the exercise of ordinary care for his own safety is properly submitted to the jury. and it can not be said that a finding by the jury that he was in the exercise of ordinary care, considering all the circumstances surrounding him at the time, is manifestly against the evidence.

3. HARMLESS ERROR—*Where There is One Good Count.*—Where there is one good count about which there can be no question in the declaration, it is harmless error, if error at all, for the court to refuse to instruct the jury that the plaintiff can not recover under the other counts.

4. INSTRUCTIONS—*As to What is Negligence.*—An instruction which tells the jury, in substance, that certain acts of the plaintiff, if they believe them proved, were negligence, is improper, because what was negligence is a question for the jury.

5. SAME—*As to What Constitutes Due Care.*—An instruction which tells the jury that certain acts of the plaintiff did not constitute due care on his part, is properly refused.

Action in Case, for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding.   Heard in this court at the October term, 1899.   Affirmed.   Opinion filed March 26, 1900.

Statement by the Court.—William Mohan, aged fifteen years, was injured on April 18, 1896, by being struck by

the pilot beam of appellant's engine drawing a train of twenty-four freight cars going from west to east, at the crossing of appellant's railway at South Forty-first avenue, Chicago, the injury resulting in the boy's insanity of a grave and chronic type, which is apt to prove incurable. Prior to the injury he enjoyed good health and was a bright, intelligent boy. He brought an action by his next friend, upon a trial of which before the court and a jury he recovered a verdict of $15,000, upon which, after a remittitur of $7,000, the court rendered judgment for $8,000, from which this appeal is taken.

The declaration as originally filed consisted of five counts, the first of which set up an ordinance of the city of Chicago requiring the bell of each locomotive engine running within the city to be rung continually except in certain sections of the city away from the place of the accident, and charges that the defendant carelessly and negligently ran its engine without ringing or causing to be rung a bell thereon; the second count charges negligence in failing to ring a bell of at least thirty pounds weight, at the crossing of the railroad at a public highway in violation of the statute; the third count sets up an ordinance of the city of Chicago requiring the bell to be rung by a corporation operating a railroad within the limits of the city at all streets or public crossings, and charges a violation of this ordinance; the fourth count charges that the defendant, while operating its engine and train across the public highway, so carelessly and improperly drove and managed its engine that by and through the negligence and improper conduct of its servants, the engine ran into and struck the plaintiff; the fifth count charges that the defendant, while operating its engine and train along its railroad intersecting the highway along and upon which it knew great multitudes of people were constantly passing to and over the crossing of the highway, it recklessly and negligently drove and operated its engine and train of cars along and upon its railroad and over the highway without giving any signal or warning to travelers upon the highway of the approach of

the engine and train, and in so doing negligently drove the same upon and against the plaintiff, whereby he was injured, etc.

Subsequently the declaration was amended and the first, second, third, fourth and fifth counts of the amended declaration are the same as the original.    The sixth count of the amended declaration was dismissed upon the motion of the plaintiff, and the jury instructed that there could be no recovery under it.

The seventh count of the amended declaration sets up an ordinance of the city of Chicago with regard to the operation of freight trains, dividing the city into three districts and limiting the speed of freight trains in the third district to twelve miles per hour, and charges a violation of this ordinance, in that the defendant operated its freight train at a greater rate of speed than twelve miles per hour, and in so doing caused the injury in question.    The plea was the general issue.

It may be stated in a general way, that the evidence shows that plaintiff, about 6:20 P. M. on the day in question, which was bright and clear, was proceeding to do an errand for his mother, and as he came south on the west side of Forty-first avenue on the sidewalk, there being no sidewalk on the east side of the street, and as he came near the crossing of the street at the railroad tracks, a passenger train of appellant of about 300 feet in length came by, going at the rate of about twenty miles per hour from the east toward the west, and along the northerly of the two tracks of the railroad, and as soon as this train had passed the crossing of Forty-first avenue, plaintiff continued on his way, coming upon the railway tracks immediately behind the passenger train, and just as he had cleared the south rail of the south tracks he was struck on the hip or side by the south end of the pilot beam of appellant's engine, going from west to east on the south tracks, drawing a train of twenty-four freight cars and going at the rate, as estimated by the various witnesses, of from ten to nearly fifteen miles per hour, and as others state it, "going fast."    The evidence tends

to show that the plaintiff left the westerly sidewalk about the time he went upon the railway tracks and ran in a southeasterly direction and was struck near the middle of the planking roadway which made the street crossing over the railway tracks, thus indicating that in his attempt to avoid the swiftly approaching engine which suddenly came to his view as he went upon the tracks, he swerved from the direct course to the south, which he was going at the time the passenger train was passing, and as he came upon the tracks. The evidence tends to show that the engines of the two trains met at or near Crawford avenue station, which was some 400 feet to the west of Forty-first avenue; and that when the plaintiff went upon the railway tracks and was some twenty feet to the north of the east bound track, the engine of the freight train came to his view two or three car lengths—that is from sixty to ninety feet to the west of him.

There is a conflict in the evidence as to the rate of speed at which the freight train was running, one of plaintiff's witnesses, the engineer in charge of the freight engine, testifying that it was " running very near fifteen miles an hour," and three others, ladies, who appear from the evidence to have been in a position to see the train and to form an estimate of the rate at which it was going, say, two of them, that it " was going or running fast," and the other, that it was " going very fast, I could not say how fast." It also appears from other testimony, both on the part of the plaintiff and the defendant, that the train was stopped as quickly as possible after the boy's danger was observed by the train men, and that when the engine was stopped it was from 400 to 500 feet, or about a block east of Forty-first avenue, thus indicating that its speed must have been quite considerable, as there is no evidence that there was any difficulty in stopping the train by reason of its being down grade or from any other cause.

On behalf of the defendant three witnesses, two switchmen and the fireman of the freight train, each testify that the train was going " between ten and twelve miles an

hour." One of the switchmen was upon the front footboard of the engine and the other on the rear end of the train. The fireman was at his post in the engine cab.

There is a conflict in the evidence as to whether the bell was rung at the crossing, the engineer testifying that he could not say whether the bell was rung or not, that he was not ringing the bell, that there was no one to ring the bell except the fireman, and that the fireman was feeding the fire about the time of the accident. Another of plaintiff's witnesses testified that a bell was not rung or a whistle sounded.

On behalf of the defendant the fireman testified that he was ringing the bell at the time of the accident. No other witness testified on that point except the switchman on the rear end of the train, who said he could not say whether the bell was ringing or not. The switchman who was on the front foot board of the engine was not asked anything on that subject, and there was evidence that no other signal or warning was given of the approach of the train. There were no gates nor flagman at the crossing.

There were three photographs offered in evidence, showing the place of accident, the railway tracks, sidewalk, planking at the street crossing of the tracks and the immediate surroundings, which can not be described accurately. They must be seen to be appreciated.

There were also offered in evidence two ordinances of the city of Chicago, by one of which the speed of freight trains in the third district of the city of Chicago is limited to twelve miles per hour. It is agreed that the accident happened in said third district. The other ordinance provides in substance that every corporation operating a railroad within the limits of the city of Chicago shall be required to cause the engine bell to be rung when being operated and when crossing streets and public crossings within the corporate limits of the city.

The court gave to the jury on behalf of the defendant thirty-seven instructions, no instructions being asked by the plaintiff, and also refused to give eight instructions asked

by the defendant. These eight refused instructions appear in the abstract and record after the ones given, and were apparently asked at the same time as were the given instructions. The first of the refused instructions is to find the defendant not guilty. The second, third, fourth, fifth and sixth refused instructions direct the jury, in substance, to the effect that the plaintiff is not entitled to recover under the fifth, fourth, third, second and first counts, respectively, of the declaration. The seventh and eighth refused instructions will be referred to in the opinion.

HENRY A. GARDNER and HENRY L. STERN, attorneys for appellant.

WING & CHADBOURNE, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellant claims, first, that the preponderance of the evidence is in its favor as to the speed of the train, the ringing of the bell at the crossing, and as to the plaintiff's contributory negligence; second, that there was error in refusing each of the eight refused instructions; and, third, that proper evidence was excluded; and that by reason of each and all of these claims the judgment should be reversed.

As to the matter of the speed of the train, the ringing of the bell and the contributory negligence of the plaintiff, we are of opinion, after a careful and critical reading of the evidence in the light of the exhaustive arguments of appellant's counsel, that each of these matters is a question properly and peculiarly for the consideration of the jury. As will be seen from the statement preceding this opinion, there is a conflict in the evidence as to the speed of the train and the ringing of the bell, and we can not set out and discuss all the various elements and circumstances shown by the evidence without unduly extending this opinion. We are inclined to the view that the preponderance of the evidence all considered justified the jury in finding that the speed of the freight train exceeded twelve miles per hour, and thus

that the city ordinance in evidence and counted upon in the declaration, limiting the speed of freight trains in the district where the accident happened to twelve miles per hour, was violated. And in this connection it is important to note that each of the appellant's witnesses who testified on this subject, do not vary in the least, placing the speed of the train at " between ten and twelve miles an hour." This justified the jury in believing that the train was going at least at the rate of twelve miles an hour, which was the extreme limit of the ordinance. The evidence on behalf of the plaintiff was to the effect that the speed was " very near fifteen miles an hour," that the train was " going or running fast," that it was " running very fast." The evidence as to the distance the train ran after the trainmen saw the boy, was that it went from 400 to 500 feet, or about a block, and that it was stopped as soon as possible. The jury having seen the witnesses and heard them testify, and having observed the manner of giving their testimony and their appearance, were in a better position to judge of their credibility than we are. The trial judge having had the same advantages and having apparently agreed with the jury by overruling the motion for new trial, we do not think the verdict should be disturbed in this respect.

As to the ringing of the bell, only four witnesses testify; the engineer, that he did not know whether the bell was rung or not, and that the fireman was feeding the fire about the time of the accident; and the witness, Jennie Styler, that it was not rung; and on behalf of the appellant, the fireman testified that he did ring the bell. The switchman on the rear of the train said he did not know whether the bell was rung or not. We can not say, from anything appearing in the record as to the evidence on this point that the jury was not justified in finding that the bell was not rung, and therefore that the appellant violated not only the city ordinance offered in evidence, but also the statute of this State, both of which were counted upon in the declaration.

As to the question of the contributory negligence of the

boy, we are of opinion that reasonable, intelligent and fair-minded persons might well have reached different conclusions. There is a conflict in the evidence on this point. In a letter, written four days after the accident by the engineer, to appellant's division superintendent, he said, in speaking of a conversation with the boy after the accident, "I asked him what was the matter? Did he not see us coming? and he said 'No.'" Nellie Russell testified that the boy walked out "just as the passenger train got by. * * * I saw him walk right in front of the freight train, behind the passenger, right after the passenger train went by. * * * I did not see him before the passenger train went by; just as the passenger train passed I saw him walk up."

Jennie Styler testified:

"Just as soon as the passenger train went by, the boy came right in there. I did not see the freight at all until it almost struck the boy. * * * I suppose the passenger train had just got by, and then, just as the freight train got to the crossing the boy attempted to go by on the sidewalk; just as I saw him he was right on the track and the engine struck him just as I saw him."

On behalf of appellant the switchman on the front footboard of the engine testified:

"He started to run across ahead of us. I hollered at him and was spellbound. I thought we would probably kill him, and he just got by, but not far enough to clear the engine, and we hit him on the hip or side, knocked him down a little, and he picked himself up and started to go off. * * * He cut diagonally across ahead of us and tried to beat us across there. * * * When the engine of the freight, on which I was standing, reached the crossing, the end of the passenger train had cleared Forty-first street by two or three car lengths. * * * I am sure that the end of the passenger train had cleared Forty-first street crossing before the engine of the freight on which I was standing reached Forty-first street. * * * He was hit by the beam and had almost cleared the track when he was struck. Just as he was leaving the track the beam of the engine caught him. When I first saw him he was running south. At the time I first saw him, when he got on the track, he ran diagonally to get ahead of us."

The same witness, in speaking of a conversation he had with the boy immediately after the accident, testified :

" I asked the boy why he tried to get ahead of us on the crossing.   He said he had a parcel to deliver to somebody down the street some place, and thought he could beat us across.   *   *   *   He told the engineer that he was in a hurry and he thought he could beat us across or get across ahead of us.   *   *   *   When I first saw him he was on the north side of the track, probably twenty-five or thirty feet north of the north rail of the north track.   The north rail of the north track is about twelve to fifteen feet from the north rail of the south track on which we were running. *   *   *   When I first saw the boy the foremost part of our engine was between thirty-five to forty feet from the west side of the street.   I did not know at what rate of speed the boy was running.   *   *   *   When the rear of the passenger train passed our engine we were about two and one-half car lengths west of Forty-first avenue.   A car length is thirty to thirty-three feet.   The boy was on a smart run when I first saw him."

The fireman testified that when he first saw the boy the engine was " between three and four car lengths west of the crossing.   When I first saw him he was running toward the tracks.   He was on the sidewalk.   There is only one sidewalk on that street, and it is on the west side of the street.   He was running down the street and I was ringing the bell and he got perhaps ten feet from the track on the south main line and he started to run diagonally with the train.   Then he got struck."

In view of this evidence, we think that the question as to whether plaintiff was in the exercise of ordinary care for his own safety was properly submitted to the jury, and that it can not be said that a finding by the jury that he was in the exercise of ordinary care, considering all the circumstances surrounding him at the time, was manifestly against the evidence.   C. & N. W. Ry. Co. v. Hanson, 166 Ill. 628; R. R. Co. v. Kelsey, 180 Ill. 530; R. R. Co. v. Nowicki, 148 Ill. 33; R. R. Co. v. Smith, 180 Ill. 453; R. R. Co. v. Foster, 74 Ill. App. 387; Offut v. Columbian Exp'n, 175 Ill. 472.

In the Hansen case the court say:

" It seems to us impossible that there should be a rule of

law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under like circumstances must be left to the jury as one of fact."

In the Smith case, *supra*, which is in principle somewhat similar to the case at bar, the court say :

" As the train approached, he (the injured person) was standing between the track and another train passing in the opposite direction, the space between them being only about ten feet, and it was a question to be determined by the jury whether it was carelessness for him to undertake to cross the track rather than remain in that more or less dangerous position."

What we have said sufficiently disposes of the ruling of the court in refusing the first of appellant's refused instructions. The contention that it was error to refuse the second, third, fourth, fifth and sixth of appellant's refused instructions, is not, in our opinion, tenable. First, because the instructions refer to the fifth, fourth, third, second and first counts of the declaration, whereas the case was tried upon the original five counts as well as upon the first, second, third, fourth, fifth and seventh counts of the plaintiff's amended declaration; and, second, because there was at least one good count about which there can be no question in the declaration (the seventh) to which the evidence was applicable, and if it was error for the court to refuse to instruct the jury that the plaintiff could not recover under the other counts, it was harmless. Coal Co. v. Scheiber, 167 Ill. 539; R. R. Co. v. Weiland, 179 Ill. 610–14; Swift v. Rutkowski, 82 Ill. App. 113; affirmed, 182 Ill. 18–24.

Moreover, appellant, by nineteen instructions given at its request, at the same time as the refused instructions numbers one to eight, inclusive, were presented, being the fourteenth to thirty-second instructions, both inclusive, asked the jury to consider the issues under these several counts. By so doing it should be held to have waived the instructions asking the court to direct the jury there could be no recovery under these counts.

The seventh instruction was properly refused, because it tells the jury, in substance, that certain acts of the plaintiff, if they believed they were proven, were negligence. This was improper, because what was negligence, as we have seen under the facts of this case, was for the jury.

The eighth refused instruction was properly refused, because it tells the jury that certain acts of the plaintiff did not constitute due care on his part. Moreover, by numerous instructions given by the court and presented at the same time as this instruction, the questions of care and negligence, under every possible view of the case, were submitted to the jury.

Objection is also made that the court excluded proper evidence. It is sufficient to say that in the respects complained of, no exception was taken by the appellant to the exclusion of the evidence.

Considerable argument of appellant's counsel is devoted to the credibility of certain witnesses, and also as to the action of the court in permitting counsel for plaintiff to call a number of witnesses as to the mental condition of the plaintiff before and after the accident at a stage in the case when six witnesses had already testified on that subject, none of whom were experts, counsel for appellant stating that he would not introduce any testimony on that subject. We deem it unnecessary to consider in detail the evidence of the several witnesses referred to on the matter of their credibility, as that was a question peculiarly for the jury. As to the action of the court in declining to limit the number of plaintiff's witnesses as to mental condition, we think there was no error.

No objection has been made to the amount of the judgment, and being of the opinion that there is no material error in the record, the judgment is affirmed.