## Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Hattie M. Banfill.

1. PRACTICE—*Where Verdict for Defendant Should Not be Directed.* —Where there is evidence tending to establish the allegations in plaintiff's declaration, a verdict should not be directed for the defendant.

2. NEGLIGENCE—*Violation of Ordinance Requiring Railroads to Operate Gates at Highway Crossings.*—The violation by a railroad of an ordinance requiring it to keep and maintain gates at all public streets where directed to do so, is actionable negligence.

3. DUE CARE—*A Question for the Jury.*—The question of plaintiff's care in approaching a railroad crossing is a matter for the consideration of the jury.

4. SAME—*Where the Court Should Not Tell the Jury that Certain Facts Constitute Negligence or Want of Ordinary Care.*—When the questions of negligence and care in a particular case are proper to be submitted to a jury, it is error for the court to tell the jury that certain facts constitute negligence or a want of ordinary care.

5. DAMAGES — *When $20,000 Is Not Excessive.*— Plaintiff, prior to her injuries. was a strong, healthy and vigorous young woman, in good physical condition. As a result of the accident, she has become nervous and excitable; her heart's action has become extremely rapid, being over 120 beats to the minute; the muscles under the control of her will are in a constant tremor; the eighth rib on the left side is broken; there is a marked tenderness all along the spine, the reflexes, patella and ulnar are exaggerated, and the womb displaced downward and tipped back on itself, so that the top of the womb presses back against the rectum and up against the bladder. Both the ovaries are drawn down with the womb, and there is pelvic cellulitis. or engorgement of blood in the pelvis, together with a mucus discharge from the womb, known as the whites, rendering her condition such that she has been unable since the accident to walk without feeling pain or nervousness. *Held,* that $20,000 damages is not excessive.

P., C., C. & St. L. Ry. Co. v. Banfill.

6. NEW TRIALS—*Affidavits in Support of Motion Should Show Diligence of Party Presenting Them.*—Affidavits in support of a motion for a new trial should show that the party has used due diligence to obtain the presence in court of the parties making them.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed March 19, 1903. Rehearing denied April 16, 1903.

GEORGE WILLARD, attorney for appellant.

J. R. BECKETT, KITT GOULD and B. F. KLEEMAN, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

June 21, 1895, appellee, a young lady who graduated from high school in the year 1891, was struck by appellant's locomotive engine, drawing a passenger train consisting of thirteen coaches, going at a rate of twenty miles per hour, as the jury found by an answer to a special interrogatory, across 137th street in the village of Riverdale, Cook county, Illinois, and quite seriously injured. She brought suit to recover for her injuries, on a trial of which, in October, 1901, before the court and a jury, she recovered a verdict of $20,000, and judgment thereon, from which this appeal is taken.

At the close of all the evidence appellant's counsel moved the court to instruct the jury to find it not guilty, asking a written instruction to that effect, which the court refused.

The first claim made by appellant is that the court erred in refusing this instruction, but we can not yield assent to this claim. It is sufficient to say in this connection that the evidence, to which more specific reference will hereafter be made, tends to establish the negligence, or some of it, charged in the declaration, and that the plaintiff was, at the time of and immediately preceding the accident resulting in her injury, in the exercise of ordinary care for her own safety. Such being the state of the evidence, as is established by numerous decisions by this and the Supreme Court, the trial court did not err in refusing to give the instruction directing a verdict of not guilty.

The declaration, which consists of three counts and four additional counts, in substance alleges that while the plaintiff, with all due care and caution on her part, was walking upon and along the public crossing and sidewalk of 137th street, where it intersected the railway tracks of the appellant, appellant, by its servants, negligently and carelessly caused its locomotive engine, with a train of cars thereto attached, to be driven to and over said public crossing and highway at such a dangerous and excessive rate of speed, to wit, thirty miles per hour, that the said locomotive engine with the cars attached thereto, struck plaintiff with great force and violence, throwing her to and upon the ground, thereby causing the injury complained of; also that the defendant, through its servants, drove said locomotive engine and cars without a bell of thirty pounds weight or steam whistle placed thereon which was rung or whistled by the engineer or fireman at a distance of at least eighty rods from the intersection of said 137th street and the tracks of appellant's railroad, and kept ringing and whistling until said public highway was reached by said engine and cars; also that the defendant ran its said locomotive engine and cars attached at said dangerous and excessive rate of speed, to wit, thirty miles per hour, without lowering its gates at the intersection of said street with its railway tracks, and without giving any warning of its approach to said highway crossing; also that the defendant ran its said engine, with cars attached, over said highway crossing, but failed to keep and maintain gates and a gate keeper or watchman thereat to signal persons traveling across or about to travel across the crossing of said street and railroad, and to warn persons of the approach of any engine, car or trains, as required by an ordinance of the village of Riverdale, to that effect, which is set out in the declaration, and that in consequence of the failure and neglect of the defendant in this respect, the plaintiff, who, in the exercise of due care and diligence, was walking across said railroad tracks at the intersection of said street between the hours of six o'clock A. M. and eight o'clock P. M.,

was struck by defendant's engine, with train of cars attached and injured.

The evidence tends to show, in substance, that about twenty minutes past six o'clock A. M., on the morning of June 21, 1898, plaintiff was walking in a westerly direction along the north sidewalk of 137th street, going to her work; that the railway tracks cross this street in a north and south direction, and that the view to the south, except when one was upon the main track, upon which appellant's train approached from the south, was obstructed by the depot and by standing cars upon a side-track some six or seven feet to the east of said main track, and that an approaching train could not be seen by reason of said obstructions until a person was about upon the main track. These cars and the depot were but a short distance south of 137th street. The railway crossing gates at 137th street were up at the time, and the evidence tends to show, though it is conflicting in that regard, that no whistle was sounded or bell rung until just about the time the engine struck the plaintiff. Several persons who testified on behalf of plaintiff state that they were either standing or walking at or near the crossing in question, and heard no warning or signal of any kind until about and just before the instant when the plaintiff was struck by the engine. On behalf of the defendant the evidence is to the effect that the engine gave a long, shrill whistle from a quarter to a half mile before it reached the crossing, and after that two short, sharp whistles, just how far from the crossing does not appear; and that just before the accident several short, sharp whistles were also given, and the bell was ringing continuously by automatic power for some distance before it reached the crossing and as it went over the crossing. There is also a conflict in the evidence as to the rate of speed at which the train was going when it reached the crossing, plaintiff's witnesses putting it at from thirty to fifty miles per hour, and the defendant's witnesses at from four to five, six, and as high as ten miles per hour. The evidence shows, without conflict, that the train, including

the engine and tender, was between 900 and 1,000 feet in length, and the evidence on behalf of the plaintiff is to the effect that this whole train passed the place where plaintiff was struck about one car length before it stopped, and that plaintiff was thrown by the shock some thirty, forty or fifty feet. There is conflict in the evidence in this regard, but we are not prepared to hold but that the special finding of the jury that the engine when passing over 137th street was going at twenty miles per hour, is not far from the truth. At any rate it can not be said to be clearly and manifestly against the evidence. There is no conflict in the evidence but that the gates were up at the time, and there is no evidence that the watchman or gatekeeper at the crossing gave any warning whatever of the approach of the train. The plaintiff herself testifies that the gates were up, that the tracks were clear, and that there was nothing giving any alarm, and as far as she could see until she got on the track, everything was clear; that there then came a sudden shriek of the whistle and the train was upon her like a flash; that she had looked at all the tracks she came to, and that she heard no warning except the whistle when the engine struck her. She testified on cross-examination that she observed the condition of the gates; that she was entirely familiar with them and always went by the gates more particularly than anything else; that if the gates were up she knew she could go along all right, and knew they would be down if there was a train coming.

From all this evidence it seems quite apparent that the jury were not clearly wrong in finding that the defendant was negligent as to the rate of speed at which the train was run; that it was also negligent in failing to give warning by bell or whistle of the approach of the train to the crossing; and certainly the jury was not wrong in finding that the defendant was negligent in failing to lower the gates at the crossing and in the watchman failing to give any warning of the approach of the train. The ordinance counted upon in the declaration and offered in evidence in this regard, is as follows:

P., C., C. & St. L. Ry. Co. v. Banfill.

" That all railroad companies and the owner or owners
of any railroad tracks, shall keep and maintain at all times
at their own expense, at the crossing of the railroad tracks
with any and all public streets or highways, where they
may be directed so to do' by ordinance, order or resolution
of the president and board of trustees of the village, gates
and gate-keepers, whose duty it shall be to signal persons
traveling in the direction of either of such crossings, and to
warn them of the approach of any locomotive, engine, car,
trains, or other impending danger."

We think it clear that this ordinance was violated, that
such violation was actionable negligence, and that it was a
question for the jury, under all the circumstances in evidence,
whether or not this negligence and the other negligence
which the evidence tends to establish with regard to the
rate of speed of the train and the failure to ring a bell or
sound a whistle, as required by the statute, was the proxi-
mate cause of the injury.

On the question of plaintiff's care in approaching the
tracks, that too, we think, was peculiarly a matter for the
consideration of the jury, in view of the freight cars
obstructing the view to the south, the direction from which
appellant's train was coming, and especially in view of the
fact that the crossing gates were up, this in effect consti-
tuting an invitation to the plaintiff to go upon the tracks.
And in this connection we are not prepared to hold but
that she would have been justified in going across the tracks
without looking at all, though she does say that she " looked
every way, every way there was to look," but that she
couldn't see for the depot and other things—but saw that
the gates were up.

It is claimed that there was error in refusing instructions
8 to 15, both inclusive, asked by defendant, and especially
the tenth, in which the jury is told that the village ordi-
nance admitted in evidence did not require the defendant
to operate the gates at 137th street crossing during the
hour between six and seven o'clock in the morning. We
think it was no error to refuse this tenth instruction. The
ordinance requires that the railroad company " shall keep
and maintain at all times at their own expense " gates and

gate-keepers at the crossing of railroad tracks, whose duty it shall be to signal persons traveling in the direction of either of said crossings, and warn them of the approach of any locomotive engine, car, train or other impending danger. The ordinance places no limit of time as to when the gates should be operated and prescribes the purposes for which they should be so placed, and the record shows that an order was passed by the board of trustees of River-dale, which required that the watchman should be on duty at 137th street crossing daily from 6 A. M. to 8 P. M. We think the court was right in refusing the tenth instruction. The other instructions referred to as being refused were, we think, properly refused, because they, in varied forms, in effect, tell the jury that certain acts of the plaintiff amounted to a want of ordinary care on her part. This, as we have seen, was a question for the jury, and was submitted to it by several of the instructions asked and given on behalf of the defendant, which were even more favorable in that regard than was the right of defendant. It is well settled that when the questions of care and negligence in a particular case are proper to be submitted to a jury, it is error for the court to tell the jury that certain facts constitute negligence or a want of ordinary care. Illinois C. R. R. Co. v. Griffin, 184 Ill. 9; Chicago & E. I. R. R. Co. v. Huston, 196 Ill. 480; Landon v. R. R. Co., 92 Ill. App. 216; Chicago, G. W. R. R. Co. v. Mohan, 88 Ill. App. 151; Chicago & Alton R. R. Co. v. Scranton, 78 Ill. App. 230; West Chicago St. R. R. Co. v. Callow, 102 Ill. App. 324.

It is claimed that the court erred in refusing to allow Dr. McGregor to answer what was his usual custom in making examinations of persons who had suffered an injury, and what was his rule as to making inquiry of them as to when the injury had taken place. We think there was no error in this regard. The doctor had fully answered as to what he did in the particular case, viz., that of plaintiff's examination, and it was entirely immaterial as to what he did or was his custom in making other examinations.

It is also claimed that the court erred in overruling objections to certain questions asked of the witness Baumgartner, called on behalf of defendant. We think the evidence sought to be elicited was not of special importance, and even if it was, we are precluded from passing upon the question argued, because the record shows that no exception was taken to the ruling of the court upon appellant's objection, notwithstanding the fact that the abstract shows such an exception. The only remaining contention, upon the principal record, is that the damages are excessive. It is true that the damages seem large, and are so characterized by the trial judge in remarks made by him upon overruling the motion for a new trial. But the evidence shows that plaintiff, prior to her injuries, was a strong, healthy and vigorous young woman, in good physical condition. That she was quite seriously injured by the accident is apparent from the evidence, and it is not materially contradicted; and as a result of the accident she has become nervous, excitable, and her physical condition such, as indicated by the doctor, who seems to have been an experienced man, and for two years a medical expert in the city legal department, that her health is practically ruined. The doctor says that her heart's action was extremely rapid (he made his examination some three years and four months after the accident), being over 120 beats to the minute; that her muscles were all twitching; that the muscles under the control of her will were in a constant tremor, and all her symptoms showed that she was exceedingly nervous and suffering from a disease known as neurasthenia; that the eighth rib on the left side was broken; that there was a marked tenderness all along her spine; that the reflexes, patella and ulnar were exaggerated; that the womb was misplaced downward and tipped back on itself so that the top of the womb was pressing back against the rectum and up against the bladder; that both the ovaries were drawn down with the womb, and there was pelvic cellulitis, or engorgement of blood in the pelvis; that there was a mucus discharge from the womb, very

profuse, known as the whites, and that these organs were very much inflamed and exceedingly tender. The condition in which the doctor found her, he said, in his opinion, was caused from the nervous shock brought about by the injury to which she testified. The plaintiff herself testified that she suffered great pain for two weeks, and could not get out of bed for three weeks so that she was able to sit up; that, at the end of the three weeks, her head pained her; that her side pained her, and everywhere her side pained her constantly; that she was flowing continually for three weeks or more, profusely; had great pain; since that time she has been irregular, and when she got excited or nervous that was apt to bring them on, and at other times they got stopped perhaps for two months or more; that before these occurrences her health was perfect; had no pain; that since her injury she has never been able to walk real fast, as she "walked without feeling pain or nervousness of some kind, nervousness that time. I have never been able to walk the same or feel the same." Several persons who knew her well prior to her injury testified to her uniform good health, and that after her injury her state of health was very poor and she frequently took treatment for her injuries.

From a careful consideration of the whole evidence, we are of opinion that not only the general, but also the special verdicts are not manifestly against the evidence. As to the amount of the general verdict, while it seems to us large, we can not say it is so clearly wrong as makes it our duty to interfere with it. The evidence of the only surgeon who testified in the case, and who examined her about three years and four months after plaintiff's injury, with the testimony of plaintiff, clearly indicates that her injuries were very serious in their nature and quite likely to prove permanent. Moreover, it appears that on the motion for a new trial, the trial judge proposed to allow appellant to have an examination of plaintiff by a surgeon to be appointed by the judge, to which appellee, by her counsel, consented, but appellant's counsel did not see fit to avail of the court's

offer. Nor did appellant see fit to call the physician who was called to treat plaintiff immediately after her injury, though it seems quite apparent that he treated plaintiff at the instance of some of appellant's train crew. Considering these matters, it is apparent that appellant preferred to have the verdict judged by appellant's evidence, which, considered in connection with the fact that the jury and the trial judge saw and heard the witnesses and could observe their demeanor on the stand, we think we should not disturb because of its amount.

After the motion for new trial was overruled and judgment was entered, appellant moved to set aside the judgment, and to grant its motion for a new trial, and in support thereof filed and read certain affidavits, all of which are either cumulative as to the nature and extent of plaintiff's injuries, or in explanation of the manner and circumstances under which Tillie Krumroy, one of the affiants, made her affidavits, and of the efforts of one of appellee's attorneys to get her to change the same. In so far as they are cumulative, it is well established the affidavits should not be a sufficient basis for a new trial, but waiving that objection, there is nothing in any of the affidavits to show any diligence on the part of appellants. For all that appears from appellant's affidavits, they might have had each of the persons who made the affidavits present to give their testimony at the trial. A party can not be allowed to speculate on the chances of a trial, and then ask a new trial because of the absence of witnesses by whom he thinks he might have made a better case or defense.

The judgment of the Circuit Court is affirmed.