SUTLIFF, C. J., and PECK, GHOLSON and BRINKERHOFF, JJ., concurred.

---

EVAN BROCK ET· AL. *v.* JOSEPH HIDY, JR., ET AL.

1. Ordinarily, in equity, time is not of the essence of a contract, and will not be so considered, unless it has been made so by the express terms of the contract, or has been so treated by the parties, or is necessarily so from the nature of the contract. And where a sale of land has been made on a term of seven years' credit, with interest payable annually, and the vendor waives the payment of the interest as it accrues, until the expiration of the term of credit; and the land has largely appreciated in value, by means of improvements made by the vendee, with the vendor's knowledge, the vendor, on the expiration of the term of credit, and the nonpayment of the purchase money, is not entitled to rescind the contract as against judgment creditors of the vendee, seeking to subject his equity to the payment of their claims.

2. As a general rule, a vendee of land, seeking to enforce a specific performance by the vendor, must tender or bring into court the amount due on the purchase money; but where the vendor denies the obligation of the contract, attempts to rescind it, resumes possession of the land, and is in the receipt of the rents and profits thereof, he may maintain his action without such tender

CIVIL ACTION. Reserved in· the district court of Fayette county.

This is a proceeding by attaching creditors of one Martin L. Carr, a defendant, to subject his alleged interest in eighty-six acres of land in Fayette county to the satisfaction of their judgments.

The facts are, in substance, as follows:

In January, 1844, one George Washington being the owner of the land wished to sell it. The defendant, Hidy, and one Solomon Carr, his uncle, entered into a verbal arrangement, by which Hidy was to buy the land of Washington, and, after he got the deed, sell it again to Solomon Carr at the same price; and, in consideration of the relationship and friendship existing between Hidy and said Solomon, and the embarrassed circumstances of the latter, Hidy was to wait on him for the purchase money seven years, on condition that said Solomon would pay, annually, the interest thereon, and also the taxes that might be assessed on the land.

Thereupon, the land was surveyed under the direction of the parties, and on the 19th of January, 1844, Washington executed to Hidy a deed for the land, in consideration of $291, paid in hand, in lieu of $301, which Hidy was to pay, but only half in hand and the balance in a year.

On the same day, in pursuance of the verbal agreement between them, Hidy executed to Solomon Carr a penal bond to convey the land to him in seven years, on payment of the purchase money, interest annually and taxes.

At the same time the bond was indorsed, with the understanding, signed by Solomon Carr, that the penalty of the bond should be void, in case the title from Washington turned out to be bad.

Solomon Carr went into possession of the land immediately, cleared and fenced fifty acres, and built a dwelling house and other buildings.

After the first year's interest became due, Hidy demanded it of Solomon Carr. The latter could not pay it, and the two agreed to "compound it," and that Hidy would wait until the principal became due.

Solomon Carr remained in possession of all the land until February, 1850, when he sold his interest in it to his son, the

said Martin L. Carr, who assumed to pay the purchase money to Hidy, and, in addition, paid his father, Solomon, $797.

Martin L. Carr at once went into possession of the land, except the house and lot, orchard, and stable lot, which continued in possession of Solomon, according to a verbal understanding between them.

Martin L. so continued in possession until December, 1850, when he absconded ; having, in the month of March previous, cut some of the timber down and into logs, and partially logged a field, having had some ten hands at work.

Hidy, at the time, knew that Solomon had sold to Martin L., and that the latter was in possession, and saw him at work on the land.

On the 30th of December, 1850, and a few days after Martin L. absconded, the attachment, under which the plaintiffs claim, was issued against him, and on the next day it was levied on this land in controversy.

Hidy heard of the levy of the attachment before he took possession, as stated below.

The purchase money became due to Hidy, January 19, 1851, when he demanded both principal and interest of Solomon Carr. The latter replied that he had no interest in the matter and would not pay him, and that so far as he was concerned, the contract might be regarded as at an end, and advised Hidy to take possession of the land, which he did about the 1st of March, 1851, and has ever since held possession, claiming the land as his own, and as discharged from any obligation of his under the bond he gave to Solomon Carr. It appears that, since the purchase of the land by Solomon Carr, it has, by the lapse of time, and by the improvements made by him, largely appreciated in value, and is now sufficiently valuable to pay all that is due to Hidy, and leave a considerable surplus for the creditors.

Such is the case, in substance, as presented by the pleadings and proofs, except that questions are made as to the rents and profits received by Hidy. It is not necessary here

to state the facts on that subject, as the case is remanded, and for an account of rents and profits.

*McClintock & Smith* and *N. Rush*, for plaintiffs.

*J. H. Thompson* and *R. A. Harrison*, for defendants.

BRINKERHOFF, J.—The case presents two questions:

1. Was Hidy, the vendor, under the circumstances of the case, on the expiration of the seven years' term of credit given, entitled to rescind the contract, and resume possession of the land?   And if not—

2. Are the plaintiffs entitled to a specific performance, by him, without first tendering or bringing into court the amount due Hidy for the purchase money of the land?

The plaintiffs, by the levying of their attachments, became entitled to all the rights and subject to all the obligations of Martin L. Carr; and he, by his purchase from Solomon Carr, the original vendee, stood in his shoes; and the questions, therefore, are the same as if Solomon Carr were here, seeking a specific performance against his vendor, Hidy, who had resumed possession of the premises, and had attempted to rescind the contract as against him.

Ordinarily, time is not regarded in equity as being of the essence of a contract, and is so regarded only when it is expressly made so by the terms of the contract, or the parties have so treated it, or is necessarily so from the nature of the contract.   2 Story's Eq., sec. 776.   No circumstance appears, in the present case, to take it out of the general rule.   It seems to us that there was a clear equity, on the expiration of the seven years' credit, in favor of Solomon Carr, or his vendees.   By the lapse of time, and the improvements he had made, the value of the land had been increased many fold.   A rescission of the contract would not leave the parties in *statu quo*, and equity forbids it.

The second question is:   Are the plaintiffs entitled to a sale of the land, the payment of the purchase money, interest and taxes paid by Hidy, out of the proceeds of sale, and the ap-

propriation of the balance to the payment of their judgments, without having either tendered or brought into court the amount due Hidy? We are of opinion that they are. It is a familiar general rule of equity, that a vendee seeking a specific performance of a contract for a conveyance of real estate, by a vendor, must tender, or bring into court, the purchase money. But this general rule is not invariable, or without exceptions. And among the well-established exceptions to the rule is this—that where the vendor claims to have rescinded, repudiates, and denies the obligation of the contract, placing himself in such a position that it appears that if the tender were made, its acceptance would be refused, then no tender need be made by the vendee. To this effect, the authorities are very full. *Hunter* v. *Daniel*, 4 Hare, Eng. Ch. R. 420; *Webster* v. *French*, 11 Ill. R. 254; *Johnson* v. *Sukeley*, 2 McLean's R. 562; *Irvin* v. *Gregory*, 13 Gray's R. 215; *Crary* v. *Smith*, 2 Comstock, 60. In such case, it is enough if the plaintiff offer, by his bill, to bring in the money when the amount is liquidated, and he has his decree for performance. Here the vendor not only claims that the contract is at an end, but, from the time of the expiration of the term of credit, he has been in possession of the premises, in full receipt and enjoyment of the rents, issues and profits, and, under the decree which we shall render, he can not be deprived of them until he shall be fully paid all that is due to him.

A decree may be entered, ordering that the cause be remanded to the court of common please, to take an account of the amount due to the defendant, Hidy, for purchase money, annual interest, and taxes paid by him, with interest thereon, deducting therefrom the net rents, issues and profits of the premises during the time he has had possession of the same; that the premises be appraised, advertised and sold, as upon execution at law; that out of the proceeds of such sale, Hidy be paid the amount due to him, and that the balance, after the payment of the costs herein, be appropriated to the payment of the judgments of the attaching creditors: provided that, unless the same shall, within six months from the

entering of an order finally settling the amount due to said
Hidy, be sold for a sum sufficient to pay the same, together
with the costs herein, or unless the plaintiffs shall bring such
sum into court, for the use of said Hidy, and the payment of
such costs, then the petition herein be dismissed at the costs
of plaintiffs.

· SUTLIFF, C.J., and PECK, GHOLSON and SCOTT, JJ., con-
curred.