## St. Louis & S. F. R. Co. v. Richards.

No. 2037, Okla. T.    Opinion Filed February 23, 1909.

On Rehearing June 1, 1909.

(102 Pac. 92.)

1.    **RELEASE—Right to Contest Invalidity—Restoration of Consideration.**    Where personal injuries have been suffered, for which a liability exists, and a release therefor has been fraudulently procured for a grossly inadequate sum, an action for damage may be maintained without first obtaining a decree to rescind or to cancel the release; and the plaintiff is not precluded from attacking a release so obtained, when it is set up as a defense, because he has not restored or tendered back the amount received by him at the time the release was obtained.

2.    **ACTION—Conditions Precedent—Offer of Performance.**    When, in an action at law, the tender of performance of an act is necessary to the establishment of any right against another party, such tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused.

3.    **RELEASE—Personal Injuries—Fraud.**    Plaintiff was injured while traveling on one of defendant's passenger trains. On the following day, while she was in bed at the railway company's hospital, away from friends or acquaintances, and still suffering from the effects of injuries sustained, the extent of which she did not know and apparently not in a position to ascertain, she was visited by a claim agent and physician in the employ of the defendant. The agent desired to effect a settlement and release of the damages and liability, and, in order to induce defendant to sign such release for a grossly inadequate sum, he and the physician represented to her that her injuries were slight and temporary, when in fact they were serious and dangerous, which fact the physician knew, or should have known had he exercised the proper care. Defendant believed the representations, and acted thereon by signing the release, which she would not have done had she been advised of her true condition. Held, that such facts sustained the averments of plaintiff's reply, which alleged that the release was procured by fraud, and a verdict based thereon will not be set aside on the ground that it is not sustained by sufficient evidence.

4.    **DAMAGES—Personal Injuries—Excessiveness.**    In an action for damages for personal injuries, where the evidence shows that plaintiff had always theretofore been well and able to make a living for herself and two children by washing, and also by running a boarding house, keeping from 12 to 15 boarders with

tne same number of rooms, in which she did all the work herself, making thereby on an average of from $65 to $75 per month, and which shows that since her injury, a period of about 2½ years, she haa oeen unable to earn anything, but had been compelled to pay out a great deal of money for physician's services, suffering intense pains and agony at times as a result of her injuries, which were probably permanent, we are not able to say that a judgment for $6,300 is excessive, or shows by its amount to have been rendered as a result of passion or prejudice.

(Syllabus by the Court.)

*Error from District Court, Comanche County; F. E. Gillette, Judge.*

Action by Freda Richards against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Flynn & Ames,* for plaintiff in error.—On tender of return of consideration for release as a prequisite to suit for damages: Wilson's Rev. & Ann. St. 1903, § 827; *Hill et al. v. N. P. Ry. Co.,* 113 Fed. 914; *Harrison v. A. M. R. Co.* (Ala.) 40 South. 394; *Harkey v. M. & T. Ins. Co.* (Ark.) 35 S. W. 230; *Westerfield et al. v. Ins. Co.* (Cal.) 58 Pac. 92; *East Tenn.. V. & G. Ry. Co. v. Hayes* (Ga.) 10 S. E. 350; *Hortley v. C. & A. R. Co.,* 214 Ill. 78; *Home Ins. Co. v. Howard* (Ind.) 13 N. E. 103; *L. & N. R. Co. v. McElroy* (Ky.) 37 S. W. 844; *Brown et al. v. Ins. Co.,* 117 Mass. 479; *Hancock v. Blackwell* (Mo.) 41 S. W. 205; *Bank of Barnesville v. Yocum* (Neb.) 9 N. W. 84; *Evena v. Gale,* 17 N. H. 573; *Doyle v. N. Y., O. & W. Ry. Co.,* 72 N. Y. Supp. 936; *State et al. v. Blize et al.* (Or.) 61 Pac. 735; *Levister v. So. Ry. Co.* (S. C.) 35 S. E. 207; *Mo. Pac. Ry. Co. v. Braxil* (Tex.) 10 S. W. 403; *Kelly v. Kershaw* (Utah) 14 Pac. 804.

*Stevens & Myers* and *Horace Speed,* for defendant in error.— On same question: *Mo. Pac. R. Co. v. Goodholm* (Kan.) 60 Pac. 1066; *Insurance Co. v. Hall,* 51 Ohio St.; *Sanford v. Ins. Co.* (Wash.) 40 Pac. 609; *Wagner v. Ins. Co.,* 90 Fed. 395; *Hedlum v. Holy Terror Mining Co.* (S. Dak.) 92 N. W. 33; *Girard v. Car Wheel Co.,* 123 Mo. 358; *Richards v. Frazier* (Cal.) 55 Pac.

246; *Railway Co. v. Lewis,* 109 Ill. 120; *Gibson v. Ry. Co.* (Pa.)
30 Atl. 308; *Harris v. Society,* 64 N. Y. 196; *Light Co. v. Romold*
(Neb.) 93 N. W. 971; *Obrien v. Ry. Co.* (Iowa) 57 N. W. 425;
*Lumley v. Ry. Co.,* 76 Fed. 66; *Ry. Co. v. Harris,* 158 U. S. 326;
*Anderson v. Chicago Brass Co.* (Wis.) 106 N. W. 1076; 24 A.
& E. Enc. Law (2d Ed.) 320; *Matteson v. Waggoner* (Cal.) 82
Pac. 436; *Thomas v. Beals* (Mass.) 27 N. E. 1004; *Merrill v. Pike*
(Minn.) 102 N. W. 393.

DUNN, J.   The defendant in error, who will be hereafter de-
nominated "plaintiff," on the 8th day of September, 1904, began
her action in the district court of Comanche county against plain-
tiff in error, who will hereafter be denominated "defendant," to
recover damages in the sum of $10,000 for and on account of in-
juries received by her in a wreck while she was traveling on one
of the trains of defendant.   To this petition the defendant filed
an answer containing a general denial and a plea of accord and
satisfaction, in that plaintiff had for a valuable consideration dis-
charged and released the defendant of any and all claims for dam-
ages occasioned and growing out of her alleged injury.   The re-
lease thus pleaded was proven on the trial, and is as follows:

"Whereas, I, Freda Richards, of Lawton, of the county of
Comanche, Oklahoma Territory, was injured on the 9th day of
April, 1904, on a line of railroad owned or operated by the St.
Louis & San Francisco Railroad Company, while a passenger on
train 408, which was wrecked near Seneca, Mo., April 9, 1904,
under circumstances which I claim rendered such company liable
in damages, although such liability is denied by such railroad
company, and the undersigned being desirous to compromise, ad-
just and settle the entire matter:   Now therefore, in considera-
tion of the sum of one hundred and no-100 dollars ($100.00) to
me this day paid by the St. Louis & San Francisco Railroad Com-
pany, in behalf of itself and other companies whose lines are
owned or operated by it, I do hereby compromise said claim and
do release and forever discharge the said St. Louis & San Fran-
cisco Railroad Company, and all companies whose lines are leased
or operated by it, their agents and employes, from any and all
liability for all claims for all injuries, including those that may
hereafter develop, as well as those now apparent, and also do re-

lease, and discharge them of all suits, actions, causes of action and claims for injuries and damages which I have or might have arising out of the injuries above referred to, either to my person or property, and do hereby acknowledge full satisfaction of all such liability and causes of action. I further represent and covenant that at the time of receiving said payment and signing and sealing this release, I am of lawful age and legally competent to execute it, and that before signing and sealing it I have fully informed myself of its contents and executed it with full knowledge thereof. Given under my hand and seal this 9th day of April, A. D. 1904. Freda Richards. [Seal.]"

To this answer and release plaintiff replied generally: That, owing to her injuries, she was greatly shocked and mentally disturbed; that immediately after the wreck she was taken to the defendant's hospital at Springfield, Mo., where the agents of the defendant examined her the same day and within a short time after her arrival, and, for the purpose of obtaining the same and of inveigling and deceiving her into executing it, the physician and the claim agent of the defendant stated to plaintiff that she was but slightly injured and would recover her health in a short time, and that her injuries consisted only of slight bruises and the shock and jar inflicted at the time of the wreck. This is followed by a statement that the representations were false and untrue, that the plaintiff relied upon and believed the representations, and was induced thereby to sign the release, and that, had she known that they were false, she would not have signed it.

On the case coming on for trial before a jury, counsel for plaintiff made his opening statement, in which he stated facts supporting the petition and reply, whereupon counsel for defendant moved for judgment on the pleadings and statement of counsel for plaintiff for the reason that the same failed to state facts sufficient to support a judgment for plaintiff, and that they did show facts which entitled defendant to a judgment. This was overruled and the ruling excepted to. Whereupon counsel for defendant made his statement to the jury in which he admitted the wreck and that plaintiff was a passenger on the trian. He denied, how-

ever, that there was any negligence on the part of the company causing the wreck, but that the same came from unforseen causes.

In reference to the release signed by plaintiff, counsel stated that, "after the wreck, and while Mrs. Richards was in full possession of all of her faculties, she entered into a contract with the plaintiff, by which her claim was compromised and settled in full, and by virtue of that compromise and settlement she received $100, which she still retains. The contract was entered into, was in writing, and signed by her. We think the evidence will show that the release was fairly entered into. She was not induced by fraud to execute it, and that is a full, complete discharge and settlement of the claim now brought forward." On the offering of evidence, counsel for defendant again objected to any evidence in support of the pleadings, and exception to the overruling of this motion was properly reserved. Practically the same questions were raised again by counsel for defendant on the conclusion of the evidence for plaintiff. A demurrer lodged thereto, alleging its insufficiency to support plaintiff's claim, was overruled and exception saved. Plaintiff received the $100 in the manner as stated, on the signing of the release. No mention of the same was made in her petition. The release was pleaded as a complete defense in the answer of defendant and relied upon on the trial, and is almost the sole reliance in this court. Its inadequacy on account of the alleged fraudulent manner in which it was procured was set up in the reply, and no tender either in the pleading or elsewhere by the plaintiff to the defendant was made of the money received. The court, after informing the jury that if it found the defendant was liable to plaintiff by reason of the wreck, and that the contract or release offered in evidence by the defendant was fraudulent and therefore void, then instructed it that:

"You should then further consider the evidence in this case to determine what, if any, damage the plaintiff is entitled to recover for, and, if you find from the evidence that the $100 received by the plaintiff at the time of the execution of contract or release was equal or greater than the damage that she sustained, your verdict should be for the defendant."

Verdict was rendered in favor of plaintiff in the sum of $6,200. Judgment was entered thereon, to reverse which proceedings in error were begun in the Supreme Court of the territory of Oklahoma, and the case is now before us for our consideration and review by virtue of our succession to the duties and jurisdiction of that court.

Several questions were presented by counsel on the foregoing facts. The principal one, however, grows out of the release, the conditions under which it is alleged to have been secured, and the fact that the consideration received was not returned, or offered to be returned, prior to the institution of the action. The position of counsel for defendant on this matter will probably be best stated by quoting from their brief.

"In cases involving contracts which are attacked because of fraud, there is a fundamental distinction between that fraud which enters into the execution of the contract, and that which enters into its procurement. By fraud in the execution is meant that fraud which induces a person to sign an agreement which they do not really intend to make, such as signing a release by representing that it is not a release, but only a receipt for doctor's bills, or some other instrument. By fraud in the procurement is meant those false representations by which a person is induced to sign an instrument, the contents of which they understand perfectly, but which they would not sign but for false representations as to collateral matters. The courts hold that, where the fraud enters into the execution of the contract, there is no contract, because the minds of parties have not met, and that, consequently, the consideration need not be returned; but where the fraud does not affect the execution of the instrument, but only collateral matters inducing the party to sign it, the consideration must be returned."

In support of this we are cited a great many authorities so holding and to Wilson's Rev. & Ann. St. Okla. 1903, §§ 825-827, on rescission. Section 827, *supra*, provides:

"Rescissions, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: First: He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or dis-

ability, and is aware of his right to rescind; and second: He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

The foregoing quotation from counsel's brief, the provisions of the statute, and the numerous authorities presented by each side, all of which we are called on to consider and apply to the facts in this case, presents an invitation to enter a field of legal exploration, of which a commentator thereon (American & English Annotated Cases, vol. 8, p. 179) says:

"The authorities are in hopeless conflict on the question of the necessity for the releasor to return or tender the consideration upon repudiating a release of damages for personal injuries procured from him by fraud. It has been held, on the one hand, that the releasor cannot maintain an action of damages for the injuries sustained until he has had the release rescinded in an equitable proceeding instituted for that purpose. On the other hand, it has been held that the releasor may repudiate the release and bring an action for the injuries without returning or tendering back the money paid him as a consideration for executing the release. Between these extreme views a number of different and conflicting rules have been laid down by the courts."

Counsel for plaintiff take the position that neither the equitable suit mentioned nor the return of or the tender of the money received is necessary, and cite numerous authorities to sustain the same. To endeavor to reconcile the conflicting opinions rendered by the different courts on this proposition would be to assume a task in which there is no promise or prospect of accomplishment. In this situation it of necessity follows that we are driven to elect which in our judgment is the correct rule, nor in this are we aided by any previous decision of this jurisdiction.,

In our judgment the rule which should govern the procedure in this class of cases is laid down in the following authorities, as there is absolutely nothing involved on the one hand but the money consideration paid, and on the other the privilege of asserting a right which plaintiff contends she was induced to apparently waive by the fraudulent representations of the other party and we can

see no good reason why, rights of third parties not being involved nor endangered, and the action being between the immediate actors, a court of law, under the procedure as administered in the Code states to-day, is not vested with power to give full and ample relief:   Olston v. Oregon Water Power & Ry. Co. (Or.) 96 Pac. 1095; Wagner v. National Life Ins. Co., 90 Fed. 395, 33 C. C. A. 121; Baird v. Howard, 51 Ohio St. 57, 36 N. E. 732, 22 L. R. A. 846, 46 Am. St. Rep. 550; Missouri Pacific Ry. Co. v. Goodholm, 61 Kan. 758, 60 Pac. 1066; Sanford v. Royal Ins. Co., 11 Wash. 653, 40 Pac. 609; St. Louis, Iron Mountain & Southern Ry. Co. v. Smith, 82 Ark. 105, 100 S. W. 884; Spring Valley Coal Co. v. Buzis, 213 Ill. 341, 72 N. E. 1060; Galveston, H. & S. A. Ry. v. Cade (Tex. Civ. App.) 93 S. W. 124; Pawnee Coal Co. v. Royce, 184 Ill. 402, 56 N. E. 621; Girard v. St. Louis Car Wheel Company, 123 Mo. 358, 27 S. W. 648, 25 L. R. A. 514, 45 Am. St. Rep. 556; Ency. of Pleading and Practice, vol. 18, p. 95.   Some of the cases which we have cited, it will be noted, are those where there was, as some of the authorities say (Cutler v. Roanoke Railroad & Lumber Company, 128 N. C. 477, 39 S. E. 30), fraud in the factum, and others where the fraud was in the treaty.   Counsel for defendant concede in the former class of cases it is not necessary to go into equity to have the release set aside, but insist that in the latter class of cases it is necessary.   The foregoing cases do not recognize this distinction, and we do not regard it sound.

Now, must the consideration be tendered or returned to enable plaintiff to maintain her action?   It is conceded that it need not be when the fraud is in the fact, but it is insisted that, where the releasor is overreached and defrauded by misrepresentations in order to induce him to give apparent consent to relieve the releasee of his liability, this species of fraud constitutes a defense for the one perpetrating it where the defrauded party brings suit without a tender or an actual repayment of the money received. The case of Sanford v. Royal Ins. Co., supra, as was noted, is one where the release was procured by fraud in the treaty, and it

was there held that in such a case full relief could be given by a court of law in an action involving liability upon the original transaction. It was also contended there, as here, that the release could not be attacked for fraud, or otherwise, until the plaintiff had restored or tendered to the defendant the consideration received therefor. The Supreme Court of Washington on the proposition said:

"In suits in equity, where a bill is filed for a rescission, a restoration of the consideration received is not necessary before suit; it being sufficient that such restoration be provided for by the judgment. Such being the rule in equity, it would seem to follow as a result of our holding upon the preceding question that the rule is applicable to the case at bar. * * * Before entering judgment in this case, the respondent remitted and appellant had credit in the judgment for the full amount of the premium note and the $10 additional."

The case of *O'Brien v. Chicago, Milwaukee & St. Paul Railroad Co.* 89 Iowa, 644, 57 N. W. 425, was likewise a case where the fraud was in the treaty. The plaintiff was injured on the 8th of September, 1890, and 90 days thereafter executed a release to the company for all of his injuries. The action was brought without tendering the $250 received at the time of the signing of the release; but the court instructed the jury that, if they found for the plaintiff, they should deduct from the amount awarded to him the sum of $250, which he had already received. It was insisted in that case, as in this, that it should be reversed and remanded for a new trial because of the failure of the releasor to make an antecedent tender or return of the money. After citing a number of cases and fully considering the matter, and coming to the conclusion that this was not necessary, the court said:

"We may well inquire: Why should the plaintiff tender to the defendant that which the plaintiff was entitled to retain, even if defeated in the action? In that event he would retain the $250 by virtue of what the defendant contends is a valid transaction. When the court directed the jury that, if the plaintiff was entitled to recover, the sum paid at the alleged settlement should be deducted from the verdict, it was, in effect, a return of the money paid for the release."

The case of *International & Great Northern Railroad Company v. Shuford*. 36 Tex. Civ. App. 251, 81 S. W. 1189, written by Chief Justice Fisher, was likewise similar to the case at bar, in that the fraud was in the treaty and not in the fact. The plaintiff, neither prior to bringing her suit, nor at the time. tendered or returned to the defendant the money received upon the release. The only thing that she did was to recite a tender of it in her petition, where, in fact, she anticipated a defense, and where, as is said in the case of *Hedlum v. Holy Terror Mining Company,* 16 S. D. 261, 92 N. W. 31, and as is said in the case of *Trotter et al. v. Mutual Reserve Fund Life Association,* 9 S. D. 596, 70 N. W. 843, 62 Am. St. Rep. 887:

"The release is a matter of defense which should not have been mentioned in the complaint, and the allegations thereto might properly be regarded as surplusage."

So that for all practical results, in this case, no tender was made; but, whatever force may be given the tender mentioned in the complaint, the expressions of the court on the question that is now before us are equally forceful. The court said:

"It was not necessary that the plaintiff should bring the money into court and actually tender back to the defendant the $250 as a prerequisite to entitle her to recover judgment for damages. It was in the power of the court, and it was properly exercised in the case in entering the final judgment, to have protected the defendant in its rights as to this sum, and the verdict and judgment rendered did accomplish this purpose."

The case of *Galveston, H. & S. A. Ry. Co. v. Cade* (Tex. Civ. App.) 93 S. W. 124, was one decided by the Court of Civil Appeals of Texas, wherein the fraud was in the treaty, and where the releasor actually tendered the money to defendant, who refused it by reason of the alleged lack of authority to accept it, but insisted that the money be placed or deposited in the court. The statement of the court in reference to this matter and its disposition is fully applicable to the facts in the case at bar:

"If plaintiff should recover, and the same be deducted from the recovery, defendant would be as well off as if the money had been on deposit. If plaintiff should fail to recover, the money,

if deposited, would not go to defendant. From defendant's standpoint, in either event, no useful purpose would be served by the payment of the money into court, and such a rule would work a hardship on a plaintiff, who had not the money to deposit, and would amount to a denial of relief in a meritorious cause, and, at the same time, the application of such a rule would be of no practical benefit to the defendant. Besides, it was in the power of the court to protect the defendant in its rights as to said sum in the case, if the instrument is annulled, and the judgment here does this."

The case of *Jones v. Gulf, Colorado & Santa Fe Railway Company*, 32 Tex. Civ. App. 198, 73 S. W. 1082, written by Chief Justice Garrett, was another of this kind wherein the facts were almost identical with those in the case at bar. The averments of the petition show that the claim agent and the physician in the employment of the railway company made false representations to plaintiff and his wife as to the extent of her injuries, for the fraudulent purpose of procuring a release; the statements being that she was only slightly injured and would be well in a few weeks, when as a matter of fact, she was permanently injured. The fraud in that case, as in the case at bar, was in the treaty, and the court held in the syllabus:

"Where the release has been procured by fraud, it is not necessary for the plaintiff to pay into court the money received for its execution in order to have it set aside."

The case of *Missouri Pacific Railway Company v. Goodholm,* 61 Kan. 758, 60 Pac. 1066, was one wherein the statement of facts leaves the matter of whether the release was obtained with knowledge on the part of the injured party that he was signing a release somewhat uncertain. The statement of facts made by the court shows that Goodholm was induced to sign a release by being led to believe that his injuries were slight and temporary. The jury found that the release "was read over to him, and he was informed of its character and provisions, but that Earhart, the claim agent, and the doctor, knowingly misrepresented facts and deceived him in order to induce him to sign the same, and that he believed the representations to be true, and relied and acted

upon them in executing the release." It was also found that Goodholm was not mentally incapable to make a contract, but that he signed the release without understanding or comprehending its import. The distinction which is so sharply drawn in the case at bar was either not pressed upon that court, or, if so, the court took the same view of it that we do. Goodholm made no offer to· return the money which he received, and it was contended that, except by his so doing, he ought not to be permitted to maintain his suit. The court said:

"If the release was procured by misrepresentation and fraud, it may be ignored by Goodholm, and an action for the injuries actually suffered may be maintained. It is not· necessary that it should be first set aside in a proceeding in equity. While the fraud charged is a ground of equitable jurisdiction, legal and equitable rights are administered under our system in a single court and in one form or proceeding, and the rights of the parties can be fully protected in an action, such as the plaintiff brought. A decree of rescission or to cancel the release was therefore not a prerequisite. Nor do we think that Goodholm was precluded from attacking the release set up as a defense because the trifling amount paid when it was executed was not restored or tendered before the suit was brought. The general rule is that one who seeks to set aside a contract or conveyance should return, or offer to return, the consideration received for the same. This rule is peculiarly applicable where the property or consideration is the thing in controversy, or rather where the cause of action arises out of the fraudulent transaction that is attacked. Here, a right of action existed prior to and independent of the execution of release alleged to be fraudulent and void. There was implied admission of liability of the company to the extent of $15, and as the amount paid is conceded to be due, whatever the result of the litigation, what good reason is there for returning it? Restoration or tender is required on equitable considerations, but what injustice or inequity could result to the company, if the amount impliedly admitted to be due is held and credited upon any recovery against it? If the release is held to be binding, Goodholm is entitled to the money paid; and, if he establishes a liability for the injuries apparently sustained by him, it can be credited upon the recovery."

In the Goodholm Case it will be noted that it is stated by the court that there was an implied admission of the liability of

the company to the extent of $15, which was conceded to be due. In the case at bar the liability on the part of the defendant is specifically denied by the terms of the release. This difference to our minds is not material, however, for three reasons: First, if it was procured by fraud, it falls, and its terms go with it. The same denial of liability is then presented by the general denial of the answer. If sustained as valid, then plaintiff is entitled to keep the consideration. Second, the controlling fact in this class of cases is that the release was fraudulent, because it procured a waiver of a large liability for a grossly inadequate sum, and did this by improper methods. The release would not be held invalid for fraud where this is not the case. And, third, the jury found the release was fraudulent, and the defendant owed plaintiff more money than this amount at the time it was paid, and has given credit for it on its verdict, so, in either event, the plaintiff would be entitled to keep the consideration, and in either event the defendant is not injured. The plaintiff, when she brought her suit, submitted for the determination of the court the entire controversy, first, whether the release was void as to her, and, second, whether the company was liable for her damage, and it was not necessary, in order that she might have these things determined by the court in this action, that she either tender or plead a tender of the amount received by her, for, as is said in the case of *Knappen v. Freeman,* 47 Minn. 491, 50 N. W. 533, from the Supreme Court of Minnesota, written by Mr. Chief Justice Gilfillan:

"The willingness of the party to perform those terms which the court may think it right to impose as the price of any relief is sufficiently shown by his submitting his cause to the court, which has the power to impose the proper terms."

The facts out of which that case arose are substantially as follows: The defendant, Freeman, for certain considerations, including the note in suit, was induced, by false and fraudulent representations as to its character, to purchase certain land. The suit being brought to enforce payment of the note, defendant set these matters up in the answer, and in a separate count set out a counterclaim for money paid for taxes, and interest on a certain

loan secured by mortgage on the land, assumed by the defendant, and also interest paid on the note then in suit, prior to the ascertainment of the fraud. No tender or reconveyance was pleaded therein, and judgment was asked for the various sums paid with interest. It was claimed that the defendant's position was untenable because there was no allegation of a tender or disaffirmance, nor any demand for a rescission of the transaction. In denying the contention of plaintiff, the learned Chief Justice said:

"All that is required to justify a rescission by the court is that the contract is one that a court of equity will cancel or rescind on the ground alleged, that such ground of rescission exists, and that the plaintiff has not lost his right to a rescission by affirmance, laches, or otherwise. It was one of the rules of pleading in courts of equity, in suits where the court might impose conditions on the plaintiff, or give the defendant affirmative relief, as in suits for specific performances, cancellation of instruments, rescission of contracts, or for accounting, that the plaintiff in his bill should offer to do whatever the court might deem equitable. This was upon the maxim that he who seeks equity must do equity. But, although at one time a bill was demurrable if it omitted this offer, the requirement was in its nature formal. The offer was not one of the facts constituting the cause of action, any more than was the prayer for process. It may be doubted that the rule referred to still exists in courts where equity forms of pleading are retained. *Columbian Govt. v. Rothschild,* 1 Sim. 94; *Wells v Strange,* 5 Ga. 22. These were suits for accounting. *Jervis v. Berridge,* L. R. 8 Ch. App. 351, was a suit for cancellation or rescission, and the offer in the bill was held not necessary. However it may be where equity forms of pleading are retained, it cannot be so under the Code system, which requires a complaint to contain only a statement of the facts constituting the cause of action and the prayer for relief. See *Coolbaugh v. Roemer,* 32 Minn. 445, 21 N. W. 472. The willingness of the party to perform those terms which the court may think it right to impose as the price of any relief is sufficiently shown by his submitting his cause to the court, which has the power to impose the proper terms."

Nor should it be forgotten or overlooked in the consideration of this class of cases that they are not strictly actions brought for rescission. Hence the statute cited does not apply. The contract or release is a mere incident to the suit. The cause of action

grows out of an independent antecedent fact, and the release is simply a matter of evidence in defense to the plaintiff's claim of right to prosecute. Nor does it matter that plaintiff in the release itself waived for a consideration the right to maintain a suit for damages inflicted, if in fact the release was procured through fraud, for no contract is made except the parties thereto retain within themselves the right to assail it on the ground of fraud. Even a stipulation to the effect that any false and fraudulent representations inducing the other to enter into it should not affect its validity would of itself be of no validity. The law will not give effect to a stipulation, if fraudulently entered into, that would grant immunity to iniquity and fraud. 9 Cyc. 474.

In addition to this, to our mind the entire record shows defendant relied upon the validity of this release, and would have refused a tender had one been made. The release is pleaded in its answer. In the opening statement to the jury, counsel recited it and stated:

"The release was fairly entered into, that she was not induced by fraud to execute it, and that it is a full and complete discharge and settlement of the claim now brought forward."

The release was taken from plaintiff by the defendant for the purpose of settling the damage and of pleading it in bar of an action, should releasor bring one. We find that she brought such a suit. We find the release pleaded and urged, insisted and relied upon throughout the entire proceeding, and from the record we are forced to the conclusion, and we believe that we are safe in saying and finding, as did the Supreme Court of Missouri in the case of *Girard v. St. Louis Car Wheel Company,* 123 Mo. 358-371, 27 S. W. 648, 25 L. R. A. 514, 45 Am. St. Rep. 556, which was similar to the one at bar, where the defendant had taken a release and had been sued, and plaintiff had not paid or offered to tender back, that:

"The attitude of the defendant, throughout, as well as before, the litigation, its plea of release, its setting aside in an envelope the wages of plaintiff each week, all indicate that any tender by plaintiff, or repayment for the medical services, would have been

useless. Since the execution of that paper, defendant has continuously asserted and relied upon its validity, and still asserts it. It has been decisively held in other cases that no preliminary tender can be insisted upon, as a bar to legal action, where the facts show that the tender would have been rejected. *Deichmann v. Deichmann* (1871) 49 Mo. 107; *Westlake v. St. Louis* (1882), 77 Mo. 47, 46 Am. Rep. 4. In such a state of the facts, a tender would be what Mr. Bigelow calls an 'idle ceremony.' Bigelow on Fraud (1888) p. 424."

Other authorities supporting this same principle are as follows: Hunt on Tender, § 52; *Hills v. National Albany Exchange Bank,* 105 U. S. 319, 26 L. Ed. 1052; *United States v. Lee,* 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171; *United States v. Edmonston,* 181 U. S. 500-508, 21 Sup. Ct. 718, 45 L Ed. 971; *Chinn v. Bretches,* 42 Kan. 316-319, 22 Pac. 426; *Herberger v. Hushman,* 90 Cal. 583, 27 Pac. 428; *Pierce v. Lukens,* 144 Cal. 397, 77 Pac. 996; *Williams v. Patrick,* 177 Mass. 160, 58 N. E. 583; *Ashley v. Rocky Mountain Bell Telephone Company,* 25 Mont. 286, 64 Pac. 765; *Brock et al. v. Joseph Hidy, Jr., et al.,* 13 Ohio St. 306; *Webster et al. v. French et al.,* 11 Ill. 254-276; *Merrill v. Pike et al.,* 94 Minn. 186, 102 N. W. 393; 1 Elliott's General Practice, § 323.

In the case of *Brock et al v. Hidy, supra,* the court says of the necessity of making a tender that:

"Where the vendor claims to have rescinded, repudiates, and denies the obligation of the contract, placing himself in such a position that it appears that, if the tender were made, its acceptance would be refused, then no tender need be made by the vendee. To this effect, the authorities are very full"—citing authorities.

In the case of *Webster et al. v. French et al., supra,* from the Supreme Court of the state of Illinois, the court says:

"A party filing a bill submits to everything that is required of him, and the practice of the court is not to require the party to make a formal tender where, as in this case, from the facts stated in the bill, or from the evidence, it appears the tender would have been a mere form, and that the party to whom it was made would have refused to accept the money."

In the case of *Hills et al. v. National Albany Exchange Bank,*

*supra,* from the Supreme Court of the United States, the court in the syllabus laid down, in our judgment, the rule that should govern in all cases of this character, that:

"When the tender of performance of an act is necessary to the establishment of any right against another party, such tender ʼor offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused."

The case of *Merrill v. Pike et al., supra,* from the Supreme court of Minnesota, was one where, as in the case at bar, a release was given for personal injuries. Suit was brought by the injured party, the money was not tendered nor returned. Under the facts whereby the release was secured, the court held that the contract was voidable, though not void, and on the question of the necessity of plaintiff returning or tendering the return of the money the court said:

"Plaintiff was not required to repudiate the contract nor return the money after being notified of the claim of settlement by service of the answer. *Railway Co. v. Doyle,* 18 Kan. 58. From the nature of the defense pleaded, it is evident that defendants intended to hold plaintiff to the contract, if possible, and that they would have refused a tender of the money; and plaintiff was not required to do an unnecessary thing."

We therefore believe, with the record before us, we take no hazard in saying that it is as reasonably certain as a thing may well be that any offer made by plaintiff would have been refused. We believe counsel for defendant will concede it. If so, then why return this case for another trial that an empty, vain ceremony may be performed? And this conclusion ought not, as suggested by District Judge Hanford in the case of *Hill et al. v. Northern Pacific Railway Co.* (C. C.) 104 Fed. 754, work to the detriment of future settlements of this character. It should, however, induce people having them to be less speedy and to enter into them with injured persons only in the presence of some representative of theirs so that all parties will be more nearly on an equal footing. This would bring about equitable settlements. They would not then be attacked; but, if they are, the defendant would be thrice armed in the contest, and the plaintiff, and not the defendant,

would more often be shown to be in the wrong. To hurry a claim agent to the bedside of a bruised and broken human being, still suffering from shock, dazed by the horror of the accident, stupefied by opiates or stimulants, alone except for those in the employ of the party liable, produces, almost without exception, a settlement in which the proponent dictates the terms, and produces a situation which is almost an invitation for a contest. When reason returns to the injured, and the harm inflicted is discovered, then the asserted wrong, whether true or not, done at the settlement, is made clearly apparent. If the settlement is unfair, an additional burden is likely to be placed upon the defendant to that actually due it, while, if the settlement is honest and fair and the injured party really received all he was entitled to, the surroundings at the time of the settlement are generally sufficient to defeat and destroy it. So that, as we have seen in the final analysis, all of such settlements in practice and in fact depend for their vitality and conclusiveness upon the subsequent acquiescence of the releasor, and the releasee should from the highest promptings and motives of self-interest see to it that they are above suspicion, so that, when assailed, the very circumstances under which they are secured do not, irrespective of merit, defeat them.

Three additional questions are discussed by counsel for defendant. The first of these is that the evidence did not sustain the theory of plaintiff that the release was secured by fraud. The second is that plaintiff had failed to show that her injuries were the result of the wreck. The third is that the damages allowed were excessive in that they appeared to have been given under the influence of passion or prejudice. In order to properly discuss these questions, it will be necessary to review the evidence, and this we shall briefly do: The wreck occurred on the 9th of April, 1904, in the Indian Territory. The plaintiff at the time was riding in one of the passenger coaches of the company which was turned over on its side; she being struck by a seat and perhaps by some of the passengers falling on her. She fainted at the time of the accident. When consciousness returned she was lying under

a seat amidst the glass from the windows. On being carried out of the coach, and placed on some cushions on the ground, she remained there with the other passengers from 6 or 7 o'clock in the evening, the time of the wreck, until about 3 o'clock in the morning, at which time she was placed upon a relief train and taken to the company's hospital at Springfield, Mo., where she arrived somewhere between 8 and 9 o'clock in the morning. While lying on the ground at the scene of the accident, she was given a hypodermic injection and some whisky, as she remembers it, something like three times. At the hospital, after drinking some coffee, she was visited by the physician and claim agent of the company. The physician examined her to ascertain the extent of her injuries, and she testifies that the doctor told her that she was not hurt at all, that her injuries consisted of slight bruises and the shock only, and that she was frightened and nervous and would get over it in a few days, probably a week. That, after he examined her and told her there was nothing the matter, she asked him why it was her side hurt her so, and he told her that it was just from the fall, and that in a week or two she would be all right, and not to worry. After he was there she was given another hypodermic injection to relieve the pain which was coming back on her. Something like an hour or so later, the claim agent returned and proposed a settlement, informing her, as did the physician, that she was frightened, and that her hurt consisted of bruises and the shock. She informed him that she would be willing to settle, but, if she knew she was injured, that she would not, that she was a widow and had children to support. The claim agent thereupon told her that, if a settlement was made, it had to be right away, because he had to leave on some business. That she had no other physician make an examination of her except the company's physician. That at the time she signed the release she believed the statements of the claim agent and the physician, and, had they not been made, she would not have signed it. The injury of which plaintiff complained was prolapsus of the uterus, with other bruises and injuries of an internal and external character.

A case which seems to us to be apparently fully in point on this situation of the evidence is that of *Jones v. Gulf, Colorado & Santa Fe Railway Company*, 32 Tex. Civ. App. 198, 73 S. W. 1082, written by Chief Justice Garrett. It was a suit for personal injuries to plaintiff's wife. Demurrer was sustained to the petition, which set up:

"That defendant's servants, to wit, Drs. Peeples, Phillips, and H. Waters, and defendant's claim agent, Evans, examined plaintiff's wife as to the extent of her injuries within a short time after said collision, and before signing of the release, each of whom recognizing and knowing defendant's liability to plaintiff for said injuries, that for the purpose of obtaining a release from plaintiff for the damages aforesaid, and for the purpose of deceiving plaintiff and inveigling him to execute a release for said injuries, the said physicians and claim agent, acting for and representing said defendant, stated to plaintiff that his wife was only slightly injured, and that she would be well in a few weeks, and would be able to do and perform her usual duties, that she was not severely hurt, that she had not sustained any injuries except those apparent upon her person, which consisted of slight bruises and the shakeup attending the sudden jar at the time of the collision, which statements and representations were untrue, and known to be untrue to said physicians, at the time. If they were not so known, they should have been known to them at the time, and could have been known by their skill as physicians. That plaintiff believed said representations to be true at the time, and acted upon them and each of them in making and executing the release hereinafter referred to. That said statements and representations were untrue and made for the sole purpose to induce him to sign said release. That plaintiff did not know of their falsity, and had no means of knowing the extent of said injury except through said physicians, who were acting as the agents of the defendant. That he believed the statements of the physicians and claim agent at the time he executed said release. That he would not have signed said release if he had known the falsity of said statements made as aforesaid. That he relied solely upon the truthfulness of the representations made by defendant's physicians. That his wife was and is permanently injured to the extent of $15,000."

The holding of the court on this matter was as follows:

"Where the averments of plaintiff's petition showed that the

claim agent and three physicians in the employ of the defendant company made false representations to plaintiff and his wife as to the extent of her injuries for the fraudulent purpose of procuring a release of damages, when they knew or should have known of the severity of the injuries, it was error for the court to sustain a demurrer to the pleading. Where one states a fact which is or should be within his knowledge, intending that it be believed and acted on as true, he should not ordinarily be heard to say that the other party ought not to have believed him; there being nothing to show to such other the falsity of the representations."

Upon the proposition as to whether or not the injuries suffered by plaintiff were the result of the wreck, the evidence is somewhat conflicting, but plaintiff testified affirmatively thereto, and there was some corroborative proof. The jury evidently accepted this evidence. In such a case the familiar rule obtains that:

"Where a cause is tried to a jury, and a general verdict returned and judgment rendered on the verdict, and the evidence is conflicting and contradictory, and there is competent evidence to sustain the verdict, this court will not undertake to weigh the evidence or to determine the preponderance, but will sustain the verdict of the jury." (*Kuhl v. Supreme Lodge Select Knights and Ladies,* 18 Okla. 383, 89 Pac. 1126.)

In our judgment there is sufficient competent evidence to sustain the verdict.

The last question to which counsel for defendant address themselves, and to which our attention is invited, is that the magnitude of the judgment is evidence of the fact that it was given under the influence of passion and prejudice. The amount of injury received by the plaintiff and the amount of money redress defendant, if liable, should pay therefor, is practically altogether a matter of judgment, the exercise of which is peculiarly the province of a jury. A court should interfere only when it can say from the facts proven in the case that this power has been clearly erroneously exercised, and that the judgment is of such amount that there is a deficiency of evidence to sustain it. The facts in the case at bar show: That, prior to the accident, the plaintiff had always been well, that she had made a living for herself and two children by washing and running a boarding house, where she had from 12

to 15 boarders, with the same number of rooms, and did all the work herself.  That in this occupation she made from $65 to $75 per month, and since her injuries she had not been able to earn anything at all.  That she left the hospital for St. Louis on the same day that she signed the release, being put into a berth and informed that a physician was next to her if she required help.  That she remained in St. Louis about three weeks, returned to Lawton, still sick, being confined to her bed from the injuries.  That she was constantly under the treatment of a physician until the December following, when she went to St. Louis again, remaining there one month, returning to Lawton, and then left for Arizona, where she remained a year and eight months, taking treatment for her lungs, which had not troubled her prior to the injuries received in the wreck.  While there, she was in the hospital for over four months, paying $60 a month for nurse and doctor bills.  That she had paid to the physician in Arizona $270 and yet owed him $100.  That to another physician she had paid altogether $95 for treatment of the prolapsus, on account of which she had since the time of the injury suffered intense pains, suffering agony at times. Under these circumstances, we are asked to say that the verdict is excessive.  We cannot do so.  Other courts have had similar cases before them with the same question, and reference is here made to a few of them to show that our conclusion is not without precedent.  *Chicago & W. I. R. R. Co. v. Doan*, 93 Ill. App. 247; *Pittsburg, C., C. & St. L. Ry. Co. v. Banfill*, 107 Ill. App. 254; *Wynn v. Central Park, N. & E. R. R. Co.* (Com. Pl.) 14 N. Y. Supp. 172; *Chicago & Alton R. R. Co. v. McDonnell*, 91 Ill. App. 488; *O'Neill v. Kansas City*, 178 Mo. 91, 77 S. W. 64.  Many other cases might be cited, but the measure of damages sustained in these, and the discussion in connection therewith, justifies us in holding valid and not excessive the returns made here.

The language of Chief Justice Horton of the Supreme Court of Kansas is entirely applicable (*Union Pacific Railway Company v. Young*, 19 Kan. 488-493) :

"The trial court, whose imperative duty it was to set aside

the verdict, or reduce its amount, if the jury erred from prejudice or other cause, has approved the same, and added its sanction to the award. The question was one peculiarly proper for the jury to determine; and, although the verdict is large—larger perhaps than any member of this court would, as a juror, have returned—we cannot, in view of all the circumstances, say that such damages are so excessive as to strike the mind at first blush as being the result of bias or prejudice. To interfere, we must say that the jury acted under some improper influence or bias in the matter. This we cannot say. * * * The trial judge had some opportunity to determine from the defendant in error while on the witness stand as to his capacity for business, and his general intelligence, which is denied to us; and, considering all the facts in the case, we do not feel the liberty of saying that the verdict of the jury is so flagrant, or so outrageously unjust, as to require of us, as a reviewing court, to set it aside and grant a new trial solely for excessive damages."

The judgment of the trial court is, accordingly, affirmed.

All the Justices concur.

---

ON REHEARING.

PER CURIAM. The petition filed for a rehearing in this case resulted in further oral argument on the part of both parties and the filing of a number of additional briefs in which many of the authorities pro and con were again collated, considered, and discussed. No proposition was raised, however, that had not previously received the attention and consideration of the court in its original opinion. The primary contention that plaintiff could not maintain her suit without refunding or tendering to defendant the $100 received by her, at the time of the executing of the release, is again insisted upon. The matter has again had our careful consideration, and, while we agree with counsel for defendant that there are a number of authorities—perhaps the greater in number—sustaining their claims, yet the procedure adopted in the trial of this cause has

received recognition and sanction at the hands of eminent courts, and we believe substantial justice will usually be effected thereby. It would be futile to attempt in this or any other case of similar character to so decide it that it would be in harmony with all the adjudications.

In the argument on rehearing, counsel for defendant again insisted that the Oklahoma statute on rescission controlled, and cited us to a number of authorities of California where analogous questions had, as we claimed, been before that court under a statute like this one, and been determined in conformity with their contention.    Some of the cases cited, to our mind, were not applicable, while the declaration of the court in the case of *Hammond v. Wallace et al.,* 85 Cal. 522, 24 Pac. 837, 20 Am. St. Rep. 239, met with the dissent of Justice Works and Chief Justice Beatty, and another one of the cases on which counsel relied (*Marten v. Burns Wine Co. et al.,* 99 Cal. 355, 33 Pac. 1107) was repudiated and overruled by the highest court of that state, in the case of *Matteson et al v. Wagoner et al.,* 147 Cal. 739, 82 Pac. 436.    No case where the facts were like those in this case was referred to.    The case which, in our judgment, most nearly meets defendant's claims of those cited, is that of *Westerfield et al v. New York Life Insurance Company,* 129 Cal. 68, 58 Pac. 92, 61 Pac. 667.    The original opinion in that case was written by Commissioner Britt, and concurred in by one other commissioner.    The facts in that case were, briefly, as follows:    Plaintiffs were executors of the last will of William Westerfield.    The defendant was an insurance company.    In 1890 the defendant issued to plaintiffs' testator a policy of insurance upon his life in the sum  of $10,000.    Thereafter negotiations were entered into by the insured with the agent of the company to exchange this policy for another one of the same amount on a cheaper plan.    The proposed policy was delivered to the deceased with, it was claimed, the intention of having the earned cash value of the first policy applied on the premiums of the second one.    Decedent was in possession of both policies at the time of his death. His executors demanded payment of the amount of the second

policy, which was refused on the ground that the same never was in effect, that it had been delivered to the decedent for examination only, that he never accepted it or paid any premium thereon, and that the first policy had become void because of decedent's failure to pay the fifth annual premium, which had an exchange been effected as contemplated, and the new policy legally delivered and accepted, would have been covered by the earned value of such surrendered first policy. The executors were induced to deliver both policies to the company upon the payment of approximately one-fourth of the face value of the one sued on. After receiving this money plaintiff brought suit alleging that they were induced to accept the money and surrender the policy by the false and fraudulent representations of the defendant. Suit was brought on the second policy setting up these facts. Defendant answered admitting making the representations alleged by plaintiffs, denied their falsity, averred that they were true, and relied upon the force and effect of the release secured. It was also contended on the part of defendant, as in the case at bar, that the action could not be maintained without rescinding the contract or compromise, and restoring, or offering to restore, the money they had received as the fruits thereof. Trial was had, and plaintiffs were given judgment. The case was appealed, and under the decision of Commissioner Britt the judgment of the trial court was reversed, with the statement:

"Admitting that there is some conflict of authority, we are yet satisfied that the conclusion we have reached accords with the strong preponderance of adjudication both in this state and elsewhere."

When the case was heard by the Supreme Court, the rehearing was granted, as stated by Temple, Justice, "solely because it was thought by some members of the court that the complaint stated a cause of action for damages for deceit; it having been held in the department opinion that it did not." The Supreme Court concurred in the conclusion reached by the commissioners that plaintiffs could not maintain their action, except that they first make restitution or tender before suit, but it also found and held that the representations upon which plaintiff relied for recovery, to

wit, that the policy in question was never delivered to the decedent, and that it was merely given to him to be finally delivered if he approved it and paid the premium which he did not do, and that the deceased did not accept it, were not fraudulent but true.   The defendant also defended on an additional ground, which was likewise sustained by the court, to wit, that the agent who made the contract with the assured was without authority to do so, and that the same had not been ratified by the company.   The court found as true both of these defenses, which amounted to a complete refutation of any right or claim in plaintiff, and, it seems to us, rendered unnecessary and superfluous the passing on the question of whether or not it was necessary to make a tender.   Indeed, the court says:

"The facts proven do not show fraud, and plaintiffs could not recover in any form of action."

In the case at bar, under the instructions of the court, it was necessary, to recover, for the jury to find there was fraud in the procurement of the release, and for the court, in overruling the motion for new trial, to confirm this finding, and we have held in this court that the evidence reasonably tended to sustain this conclusion.   In this view of the situation, in our judgment the force of the case is to a considerable extent broken.   Moreover, in later cases, that court, in dealing with the same statute, has, we believe, properly announced exceptions to it which are so broad and sweeping as to embrace and recognize as proper the procedure adopted in this case.   One of the cases of this character is that of *California Farm & Fruit Company et al. v. Schiappa-Pietra et al.,* 151 Cal. 732, 91 Pac. 593, in which the court, quoting approvingly from the case of *Kelley v. Owens,* 120 Cal. 502, 47 Pac. 369, 52 Pac. 797, said:

"There are exceptional cases where restoration, or an offer to restore, before suit brought, is not necessary:   As, for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by a

failure to restore; or where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties—and it will be found that such instances, or others similar to them in principle, are those to which the authorities cited by appellant generally relate."

The list of authorities cited and quoted in the original opinion could be much extended, but we call attention to the cases of *Georgia Home Insurance Company v. Rosenfield,* 37 C. C. A. 96, 95 Fed. 358, *The Oriental et al. v. Barclay,* 16 Tex. Civ. App. 193, 41 S. W. 117, and *Union Pacific R. Co. v. Harris,* 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003. In the case of *Union Pacific R. Co. v. Harris, supra,* from the Supreme Court of the United States, the practice which was adopted in the case at bar of making an allowance on the recovery of the amount received for the release was sanctioned. It was a matter of debate in that case whether or not the release was deliberately entered into. This question was left to the jury, with the charge that, if they made an allowance to plaintiff, they should deduct from it what he had received. The same question was elaborately treated in the case of *The Oriental v. Barclay, supra,* in which Justice Finley, for the Court of Civil Appeals of Texas, said:

"The plaintiff's case here is a suit at law for damages flowing from an alleged tort. There are no allegations in her pleadings which invoke the exercise of the equitable powers of the court. She attacks the release pleaded in bar of her right to recovery as being without consideration, fraudulent, and void. The truth of these allegations a court of law has jurisdiction to determine, and, when found to be true, will disregard the instrument, as being without legal effect. It is also true that courts with equity powers will protect the equitable rights of the defendant arising upon his answer, regardless of the nature of the relief sought by the plaintiff, and will make all necessary orders to that end, and may require a tender for that purpose. Pom. Eq. Jur. § 388. In a suit for rescission the rule is that the admitted consideration received must be tendered back, to the end that all parties may be protected. Where such tender appears not to be necessary for the protection of all parties, the reason for its requirement ceases, and it will

not be enforced by the courts. *State v. Snyder,* 66 Tex. 688, 18 S. W. 106; *Terrill v. De Witt,* 20 Tex. 260; *McCarty v. Moore,* 50 Tex. 287; *Clay v. Hart,* 49 Tex. 436. In cases where equitable rights arise out of the defenses urged by the defendants, and where the subject-matter of the litigation is such that the court, by its final judgment, may give full protection without the requirement of a tender, no good reason is perceived for the making of such requirement. In this case, as has already been seen, no money was received and appropriated by the plaintiff. The value of the board, lodging, nursing, medical attention, etc., claimed by defendants as part of the consideration, under the circumstances of this case, were elements of damage arising out of the injuries inflicted; and the court was able in its final judgment to protect the defendants in the expense they had incurred for the benefit of the plaintiff, and did so, by having the amount of such expenditures deducted from the amount of damages found by the jury to have been sustained by the plaintiff. This practice is approved in the following cases: *Railroad Co. v. Doyle,* 18 Kan. 58; *Railroad Co. v. Lewis,* 109 Ill. 120; *Mateer v. Railway Co.* (Mo.) 15 S. W. 970: *Railroad Co. v. Harris,* 158 U. S. 330-333, 15 Sup. Ct. 483, 39 L. Ed. 1003. See cases cited. Under plaintiff's theory of the matter, she was never bound by the terms of the release; and as the court could fully protect the rights of the defendants in case it were found that their contention was true in relation to the board, etc., being part of the consideration agreed upon, we think the plaintiff was entitled to a judicial determination of her rights, without being embarrassed by a requirement of tender. The court did not err therefore in refusing to charge the jury in accordance with the contention of appellants as to a tender of the alleged consideration of the release."

It is conceded on the part of counsel for defendant that, where a release of this character is secured by a representation to the party making it that it is an instrument of an altogether different nature, so that the fraud is in the fact of the document itself, then plaintiff would be entitled to ignore it and begin action without making tender, being merely required to account for the amount received in any judgment recovered; but they contend that, where the overreaching fraud is perpetrated by a different species of deception on the part of the defendant, then plaintiff cannot be heard to prosecute an action on the original liability .

until rescission has been accomplished, either by restoring the money or making a tender of it. This same distinction was presented to the Circuit Court of Appeals of the Sixth District, in which the question was whether or not in a suit at law plaintiff might meet a plea of release by replication that a release was obtained by fraud, and this whether the fraud was in the execution or in misrepresentations which induced the execution where the question was solely between the parties. Judge Taft, speaking for the court in the case of *Wagner v. National Life Ins. Co. of Montpelier*, 33 C. C. A. 121, 90 Fed. 395, sweeps aside this artificial distinction with the following language:

"Our conclusion is therefore that it is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution. We are glad to come to this conclusion, because it avoids circuity of action, and thus facilitates the administration of justice. Of course, cases may be conceived where the avoiding of a release may concern the rights of others not parties, or may involve the application of peculiar equitable doctrines of confidential relations and the like, and thus present issues which only a chancellor, with his flexible procedure and careful discrimination, can properly adjust and decide. In such cases the parties can be remitted to equity; but, where the issue is simply one of fraudulent misrepresentation, it may be as well tried to a jury as to a court of equity, for fraud is an issue of which courts of law and equity, from time immemorial, have had concurrent jurisdiction."

The court, in the syllabus, held as follows:

"It is proper, in a suit at law, for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution or in misrepresentation as to material facts inducing execution, where the issue involves simply a question of fraud between the parties."

To our mind the reasoning of this case on the question of procedure is unassailable, and why should it not apply with equal force to the entire question of fraud when the controversy is, as was stated and limited by that case, confined solely to a dispute between the parties? Nor, in our judgment, did it add anything

to the force of the release that it contained a proviso releasing and discharging all suits, actions, and causes of action or claims growing out of the alleged injury because the same facts which would render it invalid against plaintiff in one particular would render it equally invalid as to the other. A party fraudulently induced to waive a right to assert a right is no more bound by that kind of an agreement than by an agreement fraudulently obtained to waive any other right.

It clearly appearing to our minds that the defendant could not possibly have been injuriously affected by plaintiff's failure to restore or make tender of the sum received, the original conclusion reached is therefore adhered to.

The petition for rehearing is denied, and the mandate is directed to issue.